## CLANCY VS. McENERY.

Where a complaint alleged that the plaintiff, being named by mistake, instead of C., as payee in a note, indorsed it to C., without any consideration, and merely to enable C. to collect it in his own name; and that, the note not being paid at maturity, C. caused it to be protested and notice of protest to be given to the plaintiff as indorser, and then fraudulently sold it to another party, and that the plaintiff was obliged to pay and did pay it: *Held*, on demurrer, that the payment was voluntary, and the complaint did not state a cause of action.

ERROR to the Circuit Court for *Rock* County.

The action in the circuit court was brought by *McEnery* against *Clancy*. The complaint alleged, in substance, that a note executed by A. Hall & Co. was, by mistake, made payable to *McEnery*, it being the intention of the parties that it should be made payable to *Clancy*; that upon discovery of the mistake, *McEnery* indorsed the note to *Clancy*, to enable the latter to collect it in his own name; that there was no consideration for said indorsement, and it was well understood between the plaintiff and the defendant that the former "did not indorse said note for the purpose of making himself liable thereon;" that when the note fell due, the maker failing to pay it, the defendant "wrongfully and fraudulently, and for the purpose of making the defendant liable as indorser thereon, procured said note to be protested for non-payment, and notice of such protest to be given to the plaintiff;" that he then "wrongfully and fraudulently, and without the plaintiff's

knowledge or consent," transferred the note for value; and that the plaintiff "was obliged to pay and did pay" the same; wherefore the plaintiff claimed damages in the amount so paid, with interest. The defendant demurred to the complaint as not stating a cause of action, and specified as an objection that it did not show that the defendant had defrauded the plaintiff. The court overruled the demurrer, and to review this decision the defendant took his writ of error.

*Strong & Fuller*, for plaintiff in error.

*C. E. Dyer*, for defendant in error:

Under the circumstances of this case, although *McEnery* may have had a perfect defense to the note at the time he paid it, in the hands of the then holder, he was not under any obligation in the law, upon which *Clancy* can insist, to set up such defense. In this defense *Clancy* seeks to profit by his own wrong, which he cannot do. Must *McEnery* incur the expense of a lawsuit in defending a suit brought upon his indorsement in order to avail himself of legal redress against *Clancy* for this money? 2. As to the question whether *McEnery* could have defended an action on his own indorsement, by setting up the facts stated in the complaint, counsel cited 1 Campb., 383; 7 Johns., 361; Chitty on Bills, 245; Cowen's Treat., sec. 395.

*By the Court*, COLE, J. The counsel upon both sides agree upon the correctness of the proposition, "that a person who takes a bill or note after it is due, takes it subject to all objections in respect to want of consideration or illegality, and all other objections and equities affecting the instrument itself, and to which it was liable in the hands of the person from whom he takes it." It appears to me that this principle of law is entirely fatal to this action. For it is alleged, in substance, in the complaint, that *McEnery* indorsed the Hall note merely for the purpose of enabling *Clancy* to collect that note in his own name, but that such indorsement was made because he had been named the payee therein by mistake, and was without

any consideration, and that it was distinctly understood between those parties that no liability was incurred thereby. It is very clear then that *Clancy* could never have maintained an action against *McEnery* upon that indorsement. This must be conceded to be the true relation between the parties np to the time the note was transferred. It appears from the complaint, that when the note became due, *Clancy*, the holder, presented it to the makers for payment, and it not being paid, he caused it to be protested, and notice of dishonor was given *McEnery*. This was certainly a very idle ceremony, and did not change the rights or liabilities of the parties. For if *McEnery* was not liable to *Clancy* on his indorsement before the protest, it is very apparent he was not afterwards. The note was transferred after maturity, and of course was subject to all equities between *McEnery* and *Clancy*. But it is alleged in the complaint that *McEnery* became obliged to pay this note in the hands of some person to whom it had been transferred after maturity. This was certainly impossible. For *Clancy* could not have maintained an action against *McEnery* upon his indorsement, and it is an admitted proposition that a party taking a note already due, takes it subject to every defense existing against it in the hands of the holder when it became due. *McEnery*, then, could not have been under any legal obligation to pay the note to any party. And although he did pay, yet clearly such payment was entirely gratuitous, and gives him no right of action against *Clancy*. "For the law does not permit one, by voluntarily performing a service or expending money for another, to make that other his debtor." *Webb vs. Cole*, 20 N. H., 490; *Ellsworth vs. Brewer*, 11 Pick., 316; *Bachellor vs. Priest*, 12 id., 399; *Mackay vs. Holland*, 4 Met., 69; *Niles vs. Porter*, 6 Blackf., 44; *Ex'rs of White vs. White*, 30 Vermont, 339; *Kelley vs. Lindsey*, 7 Gray, 287; *Roscow vs. Hardy*, 12 East, 434.

It is claimed that the liability of the parties was in some way changed on account of the transfer of the note by *Clancy*.

But how?   Most assuredly *Clancy* could sell the Hall note to any person who might be willing to purchase it.   He was under no obligation to keep that note and himself collect it of the makers.   He had not agreed to do this, and the law imposed upon him no such duty.   But it is said that he had no right to negotiate the note as one upon which *McEnery* was liable by his indorsement, or to induce any one to take it upon the faith and credit of such indorsement.   This may be a very true proposition both in point of law and morals, but what is the consequence if *Clancy* should negotiate the instrument under such circumstances?   The party upon whom he had perpetrated the fraud might sue and recover whatever damages he had sustained by such false representation.   This we suppose would be the only result of that transaction.   But how this would affect *McEnery*, or give him any greater or other rights than he would otherwise have, we fail to understand.   Suppose *Clancy* had informed all the parties to whom the note was transferred that there was no consideration for *McEnery's* indorsement to him, and that no liability was intended to be incurred on that indorsement?   No one could then contend that *McEnery* had any ground of complaint.   His relation to the note would have been fully understood by all the parties into whose hands it might come.   But the law charges every person taking a note past due with notice of all facts impeaching its validity in the hands of the holder when it became due.   In other words, in this case the law charged every person into whose hands the note came, with full notice of the fact that *McEnery* indorsed the paper without consideration, and under circumstances which relieved him from all liability to pay it.   So it was not possible for *McEnery* to be prejudiced by *Clancy's* transferring the note with any representation as to his liability.   And in every view, the position of the counsel for the plaintiff in error appears incontrovertible, that the facts stated in the complaint show that the payment of the note by *Mc-*

*Emery* was entirely voluntary, and gives him no right of action against *Clancy*.

It follows from this that the judgment of the circuit court is reversed, and the cause remanded for further proceedings.