### T. C. Pollock, Administrator, *v.* Alexander Williams.

1. PARTNERSHIP: LIABILITY OF PARTNERS AS TO THIRD PERSONS WHEN LIMITED TO THE TERMS OF THE PARTNERSHIP.— When, by the terms of a partnership, the liability of the partners is limited, and this is known to a third person, who contracts with a partner in a matter for which by the agreement between the partners he alone is responsible, the non-contracting partners are not liable, though the partnership derived the benefit arising from the contract.

2. SAME: CASE IN JUDGMENT.— C. and H. were partners. C. was to furnish the capital, H. the labor. W., who knew of the agreement between the partners, agreed with H. to perform labor for the use and benefit of the partnership. *Held*,— That C. was not liable for the value of the labor performed by W.

ERROR to the Circuit Court of Adams county. Hon. James M. Smiley, judge.

Defendant in error sued plaintiff in error, as the administra-

tor of Calcote, to recover the value of labor done and performed for the firm of Calcote & Hitchings. The administrator of Calcote resisted payment on the ground, that, by the terms of the partnership between Calcote and Hitchings, Hitchings was to furnish all the labor; and that this was known to Williams. The testimony, instructions to the jury, and assignment of errors, are set forth in the opinion of the court.

*Carson & Shields*, for plaintiff in error, cited Story on Partnership, § 134, p. 211.

*Winchester & North* for defendant in error, contended: That there was no evidence, that Williams agreed to look to Hitchings alone for his pay. He may have said, that he looked to Hitchings for payment, but no evidence that any such agreement was made with the partnership.

SHACKELFORD, C.J., delivered the opinion of the court.

This is an action of assumpsit, on an open account, against the plaintiff in error, as administrator of the estate of James L. Calcote, deceased, the deceased partner of the firm of Calcote & Hitchings.

Plea of non assumpsit; jury and verdict and judgment against plaintiff in error.

A motion for a new trial, for the following grounds, was made, to wit: "1. Because the court erred in refusing the instructions to the jury asked by defendant. 2. The verdict was contrary to the evidence;" which motion the court overruled. To this ruling of the court, the plaintiff in error excepted. And hence the case is here by writ of error for revisal.

Before we can determine the questions presented by the motion for a new trial, and the assignments of error, we shall refer to and set out the material portions of the testimony embodied in the bill of exceptions in the case. The deposition of Thomas G. James, a witness for defendant in error, proves that he knew that defendant in error was with the firm of Calcote

& Hitchings; that witness understood that Williams was employed by the parties for the trip; that is, to bring the negroes of the firm from Nashville to Natchez, they then, said Calcote & Hitchings, being partners in the transaction; thinks the charge of $5 per day, reasonable; " does not know whether Hitchings and Calcote promised to pay in 1858, or not. Knew they were partners about the time of the date of the accounts sued on." The agreement of partnership was made in the office of this witness; and as well as he recollects, " Calcote was *to furnish the capital*, and Hitchings to do the work." He learned from both parties, that they were partners, " and that Hitchings did most all the work;" does not know who had to pay Williams, and does not know how long Williams was attending to the negroes of the said firm. The deposition of G. W. Hitchings, the surviving partner of Calcote & Hitchings, proved that at various times the firm of Calcote & Hitchings employed Williams in their business. On the 23d of October, 1858, they employed plaintiff Williams to take charge of and carry a lot of the firm negroes to Natchez, Miss. Williams left with the negroes, and remained with them until the latter part of January, 1859. His services, mentioned in the account, were rendered for, and at the requests of, the partnership in the business thereof; thinks $5 per day was enough for the same. " The firm did not promise to pay any given amount, but they agreed to give him what was right." ."By the terms of the partnership, Calcote was to furnish all the money, and I was to give my undivided attention to the business, and the profits and losses were to be equally divided. Calcote did furnish the money, and I gave my attention per contract." He did not employ Williams on his own account, but he was employed on account of the firm, and was to be paid by the firm; did not recollect, that he had made a statement, that he was alone to be responsible for the wages of Williams."

William T. Martin, a witness for the plaintiff in error, testified before the jury — That he knew the plaintiff Williams; that as attorney for Pollock & Odell, he had called on Williams, in company with Odell, to get the negroes out of the

possession of said Williams ; that plaintiff Williams had acknowledged to him (witness) that he (Williams) did not look to Calcote deceased for his pay, but that he looked to. G. W. Hitchings. That he had made the contract with Hitchings.alone. That this conversation occurred on or about January, 1859, after Calcote's death, and before administration was taken out on his estate. That the services were rendered, and that Calcote & Hitchings got the benefit; that witness had several conversations with plaintiff Williams. Plaintiff said *he understood the terms of partnership between Calcote and Hitchings to be, that Calcote was to furnish the capital, and Hitchings the labor at Hitchings' own expense.* That one of these conversations occurred in presence of Hitchings, after the death of Calcote, and Hitchings did not deny it.

The errors assigned arise upon the instructions granted with reference to the foregoing evidence, in behalf of the defendant in error, and the one requested by the plaintiff in error, and refused by the court, and the refusal of the court to grant plaintiff in error a new trial, and of the admissibility of the deposition of James and Hitchings. We shall only notice the three last assignments of error.

The third assignment is, "the court erred, in giving the instructions on the part of the plaintiff below."

These instructions are: 1. "If the jury believe from the evidence, that Calcote was a partner of the firm of Calcote & Hitchings, and that the services rendered by the plaintiff were for the use and benefit of the firm, and were rendered, the administrators of said Calcote are liable for the amount claimed, and will find for the plaintiff."

2d. "If the jury believe from the evidence that the services of plaintiff were rendered to Calcote as one of the firm of Calcote & Hitchings, they will find for the plaintiff."

The parties to this partnership were not indiscriminately united, as general partners; it was one of a limited nature, or one for special purposes: Calcote was to furnish the capital, to be invested in the purchase of negroes, for speculation Hitchings furnished no capital, but was to do all

the work; and the profits were to be equally divided between. them.

It, so far as appears from the proof in the case, was only a verbal partnership or contract. There is no proof in the case, how far one partner could bind the firm. The presumption naturally arises from the statements of Hitchings, that all the labor or work to be done by him was an equivalent for the money advances to be made by Calcote, for the purchase of negroes; that he was to buy, control, and forward to market the slaves he should purchase with the funds of Calcote.

This presumption is strengthened by the admissions of Williams, the defendant in error, to the witness Wm. T. Martin, which was, that the plaintiff below acknowledged to him that he did not look to the estate of Calcote for his pay, but that he looked to Hitchings. That he had made the contract alone with him; that he understood the terms of the partnership between Calcote and Hitchings; that Calcote was to furnish the capital, and Hitchings the labor, at his own expense; that one of these conversations took place in the presence of Hitchings, who did not deny the truth of Williams' statements, of the liability of Hitchings alone.

This would seem to be conclusive that the plaintiff was to look to Hitchings for pay for his services in bringing the negroes to Natchez, and that Hitchings was alone liable.

It is true, when there is no contract subsisting between partners, regulating their liability, and no express agreement in the partnership, as regards its regulation, then it is governed by the contract implied by the law from the relation of the parties to strangers; a party contracting with it without a knowledge of the limited liability of each partner, when the contract benefits the partnership, then the partnership, or all the partners, or parties to it, would be liable.

It seems that the learned judge who presided at the trial in the court below had in view this well-settled principle of law when he gave the instructions asked by the defendant in error. He appears to have overlooked, as a well-settled rule, — that when a party knows that one partner is liable only for certain

matters connected with the partnership, or that the partner contracting with him has no authority to bind the partnership, that the non-contracting partner shall not be liable to him although the benefit of the transaction may inure to the firm. To state it differently, he neither can call upon the firm to fulfil a contract which has been made by one partner, if he be privy to a private agreement between the partners themselves, the effect of which is to throw the responsibility upon the single partner alone.

Therefore, when four persons are partners in a coach concern, but one by agreement provides the coaches, at a certain rate per mile, he alone is responsible for repairs done to the coaches, by a person cognizant of this arrangement, although the names of *all four persons appear on the vehicle*. *Newman et al.* v. *Baker et al.*, 9 Johns. Rep. p. 207.

Judge Story lays down this rule thus : —

" There are exceptions to the general liability of partners, for acts or contracts concerning the partnership business, which deserve special notice in this connection. One of them is when in the very transaction, although it may be for the benefit or use of the partnership, and in the business thereof, yet the credit is exclusively given to the partner transacting it, upon his *sole* and *separate* liability. The law is exceedingly clear and well settled upon this point. If money is borrowed, or goods bought, or any other contract is made by one partner upon his own exclusive credit, he alone is liable therefor, and the partnership, although the money, property, or other contract is for their proper use and benefit, or is applied thereto, will in no manner be liable therefor." Story on Partnership, p. 211, § 134.

The instructions given by the court in behalf of the defendant in error, preclude the idea of a limited liability of partners. Under these instructions, the jury were bound to find a verdict for the defendant in error; they were virtually directed to disregard the testimony of William T. Martin. Looking to the testimony before the jury, we think they should have been qualified or modified, so as to have left the jury free, to decide upon the most important question before them, — whether

Hitchings was alone liable to defendant in error for his services.

There was a conflict in the testimony upon this question, and it was for the jury *alone* to settle the liability of Calcote, under proper instructions of the law of the case from the court.

The instruction asked by the plaintiff in error, which is as follows: " If the jury believe from the evidence, that Calcote and Hitchings were partners, Calcote to furnish capital, and Hitchings to furnish the labor at his own expense, and that Williams knew this, and agreed to look to Hitchings alone for his pay, the jury will find for defendants,"—should have been given by the court,—it embodied the law correctly,—if the jury should believe this testimony to be as stated in this instruction; and we think it was error to refuse it.

For these reasons, we are of the opinion that the plaintiff in error is entitled to a new trial, and that the court below should have granted him one.

Let the judgment be reversed, and the cause remanded for a new trial.