POTTER *v.* TOLBERT.

1. PARTNERSHIP—DISSOLUTION.

   A partnership is dissolved when it ceases to do the business for which it was organized. So *held* where a banking firm closed the doors of its bank, and did no business thereafter except to collect its accounts and liquidate its debts.

2. SAME—SETTLEMENT OF AFFAIRS—FIRM NOTES.

   The partner intrusted with a settlement of the partnership affairs after the dissolution of the firm is not authorized to give notes in settlement of partnership debts, unless such right is conferred upon him by the other partners.

Error to Montcalm; Daboll, J., presiding. Submitted June 10, 1897. Decided June 28, 1897.

*Assumpsit* by Thomas J. Potter against James Tolbert and Leroy Moore upon a promissory note. From a judgment for plaintiff, defendant Tolbert brings error. Reversed.

*Humphrey & Grant*, for appellant.

*N. O. Griswold* (*E. J. Bowman*, of counsel), for appellee.

MOORE, J. This suit was commenced the latter part of 1895 to recover a balance claimed to be due upon a note dated January 8, 1887, signed by "Leroy Moore & Co.," upon the back of which was an indorsement of "$500 paid January 9, 1892." Defendant Tolbert filed with his plea a denial under oath of his execution of the note. The case was tried by a jury, who rendered a verdict for the full amount claimed by the plaintiff. Defendant Tolbert appeals, and claims that under the proofs a verdict should have been directed in his favor.

The plaintiff's testimony tends to show that, for some years prior to 1884, defendant Tolbert was a member of

the firm of Leroy Moore & Co., who were engaged in the banking business at Greenville, Mich.; that the plaintiff was a depositor in the bank, which suspended payment and closed its doors in June, 1884; that the plaintiff was one of a committee of creditors and depositors; that the committee met with Moore and Tolbert at or about the time of the suspension, and were told by Tolbert that he was a full partner in the business; that at this meeting there was a proposition made by the committee to call the creditors together, and recommend that they should take 60 cents on the dollar, and that Mr. Moore and Mr. Tolbert refused, saying that they had always paid 100 cents on the dollar, and that all they wanted was time to liquidate; that, after this time, plaintiff was paid interest on the face of the account up to the date upon which the note was given.    The plaintiff further testified that Mr. Moore had the active management of the bank during the time Moore & Co. were in business, and had the active management of liquidating their affairs; that there was due him on this deposit January 8, 1887, the amount stated in the note which he took on that date.   He says that he had no knowledge after the suspension of the bank, and prior to the taking of the note, that Moore & Co. had dissolved partnership; that the note was signed and delivered to him by Leroy Moore; that there was paid to plaintiff by Leroy Moore $500, January 9, 1892; and that at that time he had no notice of the dissolution of the firm.

On the cross-examination he testified that he knew the firm Leroy Moore & Co. from the time they started business in Greenville until they suspended payment, and at times was a borrower of them; at the time of the suspension he was a creditor; that they carried on no business in Greenville but the banking business; that plaintiff was a lumberman, and handled a good many thousands of dollars each year through the bank of Leroy Moore & Co.; that their business was carried on at the corner of Cass and Lafayette streets in Greenville; that they closed their doors permanently in June or July, 1884, and that he had

no recollection of their opening again, or of their doing business, after that. He further testified that this banking firm was succeeded by the City National Bank of Greenville in the summer of 1884, which bank occupied the place of business formerly occupied by Leroy Moore & Co.; that he kept an account and made his collections through the City National Bank, of which Moore was first cashier, and then president; that, after Moore became president, he had active charge of the affairs of the City National Bank, and spent practically all of his time with it, and that the City National Bank continued to do business in the same rooms formerly occupied by Leroy Moore & Co. until 1893, when it suspended.

He further testified that prior to 1884 Leroy Moore & Co. had a sign on their banking place during the entire time they were in business, reading "Leroy Moore & Co.;" that, when the City National Bank occupied the rooms, the sign "City National Bank" was put up, and the sign "Leroy Moore & Co." disappeared; and that the note in suit was the only note he ever had for his deposit. He further testified that it was well known that Leroy Moore & Co., after the suspension, were not doing any business in Greenville except liquidating their old indebtedness, which was attended to by Leroy Moore. He further testified on the direct examination that when the committee met with Moore and Tolbert in June, 1884, it was arranged that Mr. Moore would continue in charge of the business of the firm, collecting the accounts and liquidating the debts; that no time was specified or agreed upon within which this was to be done, but the understanding was that they were to pay the debts in full.

It does not appear from the testimony of the plaintiff that he ever talked with Mr. Tolbert after this meeting in June or July, 1884. Mr. Tolbert denied the material statements contained in the plaintiff's testimony. He denied that after the bank suspended he ever authorized Moore to give notes of the firm for any indebtedness, either old or new, and claimed that he had no knowledge

of the giving of the note in controversy, or of the payment of $500 made upon it, until shortly before the suit was brought.

The questions involved are:

*First.* Did the suspension of the bank dissolve the partnership?

*Second.* After the dissolution of the partnership, was Leroy Moore authorized to give the note of the firm for the debt of the firm which existed at the time of the suspension?

Giving the testimony of the plaintiff the most favorable construction possible, the evidence is too plain for controversy that the firm of Leroy Moore & Co. ceased to do a banking business in Greenville in June or July, 1884, and that plaintiff knew of it. The law is pretty well settled that a partnership is dissolved when it ceases to do the business for which it was organized. 3 Kent, Comm. 52; Pars. Partn. 384; *Spurck* v. *Leonard,* 9 Ill. App. 174; *Bank of Montreal* v. *Page,* 98 Ill. 109; *Ligare* v. *Peacock,* 109 Ill. 94.

As to the second question: It has long been settled in this State that the partner who is intrusted with the settlement of partnership affairs is not authorized, after the dissolution of the partnership, to give notes in settlement of partnership debts, in the absence of authority conferred upon him by the other partners to do so. The liabilities of the partners might be greatly increased, and their rights greatly impaired, if the partner who is settling the partnership affairs might make partnership paper which is payable a long time in the future, without being authorized to do so. It was assumed in *Farmers & Mechanics' Bank* v. *Kercheval,* 2 Mich. 504, that the law was well settled that no such implied authority existed. In *Smith* v. *Shelden,* 35 Mich. 42, it was said: "We think it much safer to require express authority, when such obligations are contemplated, than to leave one party at liberty to execute at discretion new contracts of this nature, which may postpone for an indefinite period the settlement of

their concerns, when a settlement is the very purpose for which he is to act at all." *Atwood* v. *Gillett*, 2 Doug. (Mich.) 206; *Pennoyer* v. *David*, 8 Mich. 407; *Matteson* v. *Nathanson*, 38 Mich. 377; *Jenness* v. *Carleton*, 40 Mich. 343; *Carleton* v. *Jenness*, 42 Mich. 110; *Goodspeed* v. *Plow Co.*, 45 Mich. 237; *Johnson* v. *Emerick*, 70 Mich. 215.

The record discloses an entire absence of authority conferred by Mr. Tolbert upon Mr. Moore to sign notes for the firm after the dissolution of the partnership. There is also no proof of authority to make the $500 payment, which had the effect of taking the note out from the running of the statute of limitations. As the case stood when the proofs were closed, the jury should have been instructed to return a verdict for the defendant Tolbert.

Judgment is reversed, and a new trial ordered.

LONG, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.