ISAAC E. BARWICK AND B. H. GRIFFIN, COPARTNERS UNDER THE FIRM NAME AND STYLE OF GRIFFIN & BARWICK, *Plaintiffs in Error,* v. D. H. ALDERMAN, *Defendant in Error.*

1. Upon the issue of partnership or no partnership, the admissions of a party sought to be charged as a partner to the effect that he was a member of the alleged partnership whether made directly to the party seeking to charge him or to third persons are admissible as against him as tending to prove the fact of partnership, and such admissions though made to a third person are admissible for the purpose stated whether they were ever communicated to the party seeking to charge the person making them as a partner or otherwise.

2. .Upon the issue of partnership or no partnership tendered by an alleged partner in a suit against the firm testimony of a witness to the effect that he was present when the party so sought to be charged in the presence of the other alleged partner gave instructions to a draughtsman for the preparation of a partnership agreement to the effect that he was to furnish certain property and the other to furnish the labor for a named business, the net profits to be divided between them is relevant as tending to show the fact of partnership in connection with other testimony that the contemplated business was actually carried on by the other alleged partner with the property mentioned, and that the party sought to be charged admitted to other persons that he and the other alleged partner were partners in the business.

3. If by the terms of a partnership agreement one of the partners is to furnish or be responsible for certain articles or labor to be furnished the firm, and the other partner is not to be liable for the same, and these provisions of the partnership agreement are known to one who contracts with the partner whose power is thus limited, to supply the article or furnish the labor, the person so contracting with knowledge of the provisions of the partnership agreement can not recover against the other partner upon such contract.

4. Evidence examined and found insufficient to support the verdict. (Maxwell, J., dissenting.)

This case was decided by the court *En Banc.*

Writ of error to the Circuit Court for Manatee county.

. The facts in the case are stated in the opinion of the court.

*Langley & Singletary* for plaintiffs in error.

No appearance for defendant in error.

CARTER, J.—This cause was duly considered by Division B of this court, and there being a difference of opinion among its members as to its proper disposition, it was referred to the court *en banc* for decision.

In July, 1899, defendant in error began in the Circuit Court of Manatee county an action of assumpsit against the plaintiffs in error. The declaration alleged that the defendants under the firm name of Griffin & Barwick were co-partners in the manufacture of pine lumber, and that on or about September 1, 1898, they were indebted to plaintiff in the sum of $242 for forty and one-third thousand feet of pine logs bargained, sold and delivered to them by plaintiff at their saw mill at an agreed value of six dollars per thousand feet. The declaration also contained common counts for goods sold and delivered, work done and materials furnished, and upon an account stated. The defendant Barwick filed his separate plea to the effect that the supposed promises in the declaration mentioned, if any such were made, were each of them made by defendant B. H. Griffin alone, and not by said defendant Barwick jointly with the said Griffin. No pleas appear to have been filed on behalf of Griffin. Issue was joined upon Barwick's plea, and at the trial a verdict was found in favor of plaintiff. Thereupon judgment was entered in favor of plaintiff against both defendants, from which this writ of error was taken.

The plea, though somewhat inartificial, was treated by the parties and the court below as putting in issue the question of the existence of a partnership relation between Griffin and Barwick at the time the debt was contracted,

and also the question whether the debt sued for was not the individual debt of Griffin, and we so treat it here.

Alderman, the plaintiff, testified that he with Griffin and one Bailey were present at Barwick's on one occasion when Barwick executed a mortgage to one Saffold to secure a loan of money; that the mortgage covered Barwick's mill then in Sumter county, and the loan was obtained to enable Griffin to move the mill to Manatee county; that at the time of signing this mortgage Barwick told Bailey to draw a partnership contract between himself and Griffin, the terms of which were to be that Barwick should furnish the mill and machinery and Griffin should furnish the labor and run the mill, and the parties were to divide the net profits; that witness thought from this that the parties were partners and that Barwick would be responsible for logs furnished the mill; that on the way home with Griffin he made the contract with him to furnish logs upon which this suit was brought; that witness would not have furnished the logs if he had not thought from the instructions given by Barwick to Bailey that Barwick was a partner; that Griffin had previously informed him that he and Barwick would run the mill as partners if he could get the money to move the mill to Manatee county. Witness further testified: "Mr. Barwick did not tell me that he and Mr. Griffin were not partners, and I do not remember hearing him state to Mr. Bailey that he and his mill and machinery were not to be in any way responsible for the costs and expenses in running the mill."

U. I. McMullen testified on behalf of plaintiff that he was working at the mill for Griffin about July or August, 1897; that Barwick was there one day and witness heard him say to some men "this machinery is responsible for the wages of any man who may work here. Mr. Griffin and I are partners."

H. H. Saffold testified on behalf of plaintiff that one Bailey asked him to stop at Barwick's one day and leave a note relative to some business between Barwick and Griffin;

that witness had never seen Barwick, but had heard that he and Griffin were interested in the mill together; that as Barwick came out to meet him witness said "this is Mr. Barwick, Mr. Griffin's partner in the mill at Fort Hamer, is it?" and Mr. Barwick replied "yes."

H. P. Bailey testified on behalf of plaintiff that at the request of Alderman and Griffin he drew the mortgage from Barwick to Saffold, and at the time it was executed Barwick, in the presence of Alderman and Griffin, told witness to draw a partnership contract between himself and Griffin, the terms of which were to be that Barwick was to furnish the mill and machinery and Griffin to furnish the labor and run the mill, the net profits to be divided between them; that witness did not have materials at hand and told the parties he would make a note of what they wanted and go to his office and draw the contract; that he did go to his office and draw the contract in accordance with the instructions so given him; that he was confident Barwick told him to draw a partnership contract, but did not tell him to stipulate therein that he and his machinery were not to be responsible for any debts contracted in running the mill; that Barwick, according to witness' recollection, made such a statement to witness in private sometime afterwards, but did not instruct him to embody such agreement in the contract.

On cross-examination witness was shown a written document which he testified was the identical instrument drawn by him under Barwick's instructions given in Alderman's presence, and after reading it he admitted that he was mistaken in supposing the contract drawn by him under Barwick's instructions did not contain a stipulation exempting Barwick from liability for debts incurred in running the mill. The written contract referred to was read to the jury by the witness, as follows: "This contract by and between I. E. Barwick of Memphis, Manatee county, Florida, party of the first part, and B. H. Griffin of Manatee county, Florida, party of the second part, witnesseth: that the said

parties have this day contracted and agreed to do a general milling business in the following manner and style, to-wit: the said I. E. Barwick hereby agrees to furnish a saw mill and machinery and fixtures thereto and warrants said mill and machinery to be in good working condition, said mill and machinery being now at Wildwood, Sumter county, Florida, all of which said mill and machinery the said B. H. Griffin agrees to move to Fort Hamer, Manatee county, Florida, there to operate said mill and machinery and to have charge and supervision of said mill and machinery, and that said mill so in the hands of the said B. H. Griffin shall bear all expenses of moving and of operating it, and that the said I. E. Barwick shall not be liable for any of said expenses, and after paying all expenses of said mill, which shall include the expenses of moving said mill to Ft. Hamer in said county, then and thereafter all balances of dividends shall be equally divided between the said I. E. Barwick and B. H. Griffin, but that the return of one hundred and twenty-five dollars borrowed money is hereby specially agreed upon to be paid out of the first money available. This partnership shall cease and determine at the will and pleasure of the contractors.

Signed & sealed in presence of us          (Seal.)
on this     day of June, A. D. 1897.        (Seal.)"

Witness further stated that he did not know why the paper was never signed by the parties.

The defendant Barwick testified that after negotiations between himself and Griffin looking to a sale of his mill in Sumter county to the latter had failed, Griffin proposed to rent it, but could not procure the money to move it. After discussing several propositions made by Griffin it was agreed that witness should mortgage the mill for $124.80, the money necessary to move it, and Griffin should pay the amount of the mortgage from the first earnings of the mill, and have the use of the mill four months for moving it; that the mortgage was executed in June, 1897, and Griffin superintended the removal of the mill; that the mill was put

up by Griffin at Fort Hamer and operated by him under an agreement that he was to have full control and management, witness to have nothing to do with it and no interest in the business except that after paying the amount due on the mortgage witness was to have one-half the net profits for the use of the mill; that it was also expressly stated and agreed that Griffin should be individually responsible for debts incurred in running the mill and carrying on the business, and that witness "was in no way to pay, nor to be responsible for, any of such debts." Witness further testified that these terms of the contract were stated to Bailey in the presence and hearing of Alderman, and that Bailey pretended to take down in short hand a memorandum of what the contract was to contain which he was to draw up at his office; that subsequently Griffin brought witness the paper referred to in Bailey's testimony, which he declined to sign because its terms tended to show a partnership, while he did not intend by his contract with Griffin to form a copartnership with him; that he told Griffin the contract was not according to the understanding and another would have to be drawn; that another was drawn but never signed; that Griffin never paid anything except five dollars on the mortgage debt, and witness never received anything from the business except that sum; that witness never knew of Alderman's claim for logs, nor was witness ever requested to pay anything on account of same until long after the logs were furnished and long after witness had repossessed himself of the mill, and Griffin had left the country. Witness denied making the statements attributed to him by Saffold and McMullen, and denied that he was ever a partner with Griffin.

J. E. Whidden testified on behalf of defendant that while he was working at the mill one day he saw a notice lying around among some plunder in a room which stated that the mill belonged to Barwick; that he asked Griffin what it meant, and Griffin replied that it did not amount to anything; that some time after Griffin asked witness to see

Alderman and tell him to go get his logs and pay himself with them; that witness told Alderman, and he replied he had sold the logs to Griffin and they were Griffin's, and he, Alderman, would not have anything to do with them.

The foregoing statement of the testimony embraces the substance of all bearing upon the issues presented by the plea.

After plaintiff had rested his case defendant moved to strike the testimony of McMullen and Saffold upon the grounds that same was irrelevant and immaterial, and because it was not shown that the admissions of Barwick to the effect that he was a partner with Griffin, testified to by these witnesses, were ever communicated to Alderman, the plaintiff. The motion was refused and this ruling constitutes the basis of the first and second assignments of error.

It is argued that the admissions of Barwick that he was a partner with Griffin are merely expressions of opinion, and that even if such admissions are not mere opinions they do not tend to establish a partnership in fact, but are merely evidence of a "holding out" as a partner, which, to be available as creating an estoppel to deny the partnership, must have been known to the plaintiff at the time he extended credit. The admissions testified to by these witnesses are not necessarily mere matters of opinion, but constitute a competent evidence tending to show a partnership in fact. Like other admissions which have not been acted upon by another to his detriment, they are not conclusive upon the party making them that he was a partner or that he must be held to the liability of such, but they are competent evidence tending to prove the partnership in fact, to be given such weight as the jury under all the circumstances think proper to give them. Upon the issue of partnership or no partnership, the admissions of a party sought to be charged as a partner to the effect that he was a member of the alleged partnership, whether made direct to the party seeking to charge him or to third persons, are admissible as against

him as tending to prove the fact of partnership, and such admissions though made to a third person are admissible for the purpose stated, whether they were ever communicated to the party seeking to charge the person making them as a partner, or otherwise. Abbott's Trial Evidence, sec. 14, p. 259; 2 Bates on Partnersip, sec. 1154; 2 Greenl. on Evidence, sec. 484.

The third assignment of error is based upon an exception taken to the ruling denying the defendant's motion to strike the testimony of Alderman. The motion was made after plaintiff had rested his case and was based upon the ground that the testimony was irrelevant and immaterial. Alderman stated that he was present when Barwick, in Griffin's presence, instructed Bailey to draw a partnership contract between himself and Griffin to the effect that he, Barwick, was to furnish the mill and Griffin was to furnish the labor and run the mill, and the net profits to be divided between them. There was other evidence tending to show that the mill was removed to Manatee county, and there put up and operated by Griffin and that Barwick admitted to other persons that he was Griffin's partner in the mill business. The testimony of Alderman, especially in connection with the other evidence, tended to prove the fact of partnership between Barwick and Griffin, and was, therefore, admissible.

The fourth and last assignment of error is based upon an exception taken to the ruling denying the motion for a new trial. This motion questions the sufficiency of the evidence to support the verdict. Conceding that the testimony is sufficient to support the finding that a partnership existed between Barwick and Griffin, it seems very clear that one of the terms of the articles of copartnership was that Griffin was at his own expense to furnish the labor and operate the mill and that Barwick was not to be liable or responsible for any of such expenses. It is not shown that Barwick ever assumed liability for logs furnished under the contract made with Alderman by Griffin, and if he can be

held liable therefor, it is only upon the ground that Griffin had authority to bind him, growing out of the real or apparent partnership relation. The furnishing of logs constitutes a part of the expense of operating the mill which, under the articles of copartnership, were to be borne by Griffin, and for which Barwick was not to be responsible. The power of Griffin as a partner to bind the partnership, or Barwick as a member thereof, was limited by this provision of the partnership agreement, and if such provision was known to Alderman at the time he contracted with Griffin he will be bound by it. If by the terms of a partnership agreement one of the partners is to furnish or be responsible for certain articles or labor to be furnished the firm, and the other partner is not to be liable for the same and these provisions of the partnership agreement are known to one who contracts with the partner whose power is thus limited to supply the article or furnish the labor, the person so contracting with knowledge of the provisions of the partnership agreement can not recover against the other partners upon such contract. 1 Lindley on Partnership, *p. 173, et seq.; 1 Bates on Partnership, sec. 322-323; Parsons on Partnership, sec. 84, 22 Am. & Eng. Ency. Law, pp. 142, 143; *Knox v. Buffington,* 50 Iowa, 320; *Feigley v. Sponeberger,* 5 W. & S. (Pa.) 564; *Bromley v. Elliot,* 38 N. H. 287, S. C. 75 Am. Dec. 182; *Hastings v. Hopkinson,* 28 Vt. 108; *Chapman v. Devereau,* 32 Vt. 616; *Pollock v. Williams,* 42 Miss. 88; *Urquhart v. Powell,* 54 Ga. 29; *Baxter v. Rollins,* 90 Iowa, 217, 57 N. W. Rep. 838, S. C. 48 Am. St. Rep. 432. Does the testimony show that Alderman had notice of the terms of the partnership agreement whereby Griffin was to bear the expenses of operating the mill, and whereby Barwick was to be exempt from liability therefor, at the time he contracted with Griffin? He admits he knew that by the terms of the proposed partnership Barwick was to furnish the mill and machinery and Griffin was to furnish the labor and run the mill. He did not positively deny that Barwick stated in his presence to Bailey, who was to draw the partnership contract,

that he and his machinery were not to be in any way responsible for the costs and expenses incurred in operating the mill, but stated merely that he did not remember it. From the testimony of Bailey, the plaintiff's own witness, it is very clear that such instructions were given in Alderman's presence, and that the contract drawn in pursuance of those instructions did contain clauses to the effect stated. It is true this contract was never signed by the parties, but the contract between Alderman and Griffin for furnishing logs was made immediately after the instructions for drawing this contract of partnership were given, and there is nowhere in the testimony any suggestion that any contract of partnership differing in this respect from the terms of the one first proposed was ever entered into. The testimony shows very clearly that before the contract was made by Alderman with Griffin, the terms of the proposed partnership agreement between Griffin and Barwick were stated by Barwick in his presence and in the presence of Griffin, and that those terms embraced a provision to the effect that Griffin was to bear the expense of operating the mill, and Barwick was not to be responsible for such expense. Alderman as a witness does not deny the fact that he was present when the terms of the partnership agreement were stated. He does not positively deny that the terms so stated embraced a provision exempting Barwick from liability for the expenses of operating the mill, nor does he say that he did not hear such provision stated at the time. If he had testified to that and the jury had found as they did, this court might not be authorized to disturb the verdict, but he merely said that he did not remember that the provision exempting Barwick from liability was stated in his presence. Under these circumstances his mere declaration that he did not remember can not be held to overcome the clear positive testimony of Bailey, his own witness, corroborated as it is by the defendant's testimony, showing the facts. We think the testimony was not sufficient to support the verdict, and that the court erred in refusing a new trial.

The judgment is reversed and a new trial granted.

MAXWELL, J., dissents on the ground that the evidence was sufficient to support the verdict of the jury.