FIRST NATIONAL BANK OF ANTIGO, Respondent, vs. LARSEN,. imp., Appellant.

*September 12—October 3, 1911.*

*Partnership: Dissolution: Authority of managing partner: Giving of checks and notes: Invalidity of notes: Recovery on original consideration: Harmless error.*

1. Where one partner left the management of the business to his copartner and, after a dissolution, left the liquidation of the partnership affairs in his hands, knowing that he was to draw firm checks and expecting the bank to pay them, the partnership was liable to the bank upon checks so drawn in favor of partnership creditors and paid by the bank in excess of the firm's balance at the bank.

2. After a dissolution and notice thereof to the bank, and after the inactive partner had requested the bank not to loan any more money to the firm, the managing partner had no authority to execute a partnership note to the bank for a new loan. [Whether during the partnership but after such request not to loan more money the managing partner had authority to execute such notes, is not decided.]

3. Where notes so executed to the bank by the managing partner both before and after the dissolution were given to provide funds in the bank to the credit of the firm to cover checks drawn by the managing partner in favor of partnership creditors, the giving of such notes (assuming them to be invalid) did not discharge the firm's obligation to the bank on the checks.

4. Where a note is void for lack of authority in the signer, or for any other cause, but the payee would be entitled to recover on the original consideration if the note had not been given, the giving of the note did not discharge the pre-existing obligation; and in an action upon the note plaintiff may recover upon a separately stated cause of action upon the original consideration.

5. In such case the fact that the recovery is in form upon the note or upon the whole pleading is no sufficient ground for reversing the judgment.

BARNES, J., dissents.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

*T. W. Hogan,* for the appellant.

*Henry Hay,* for the respondent.

TIMLIN, J. This action is against George T. Smiley and *Alfred Larsen* upon four promissory notes signed Smiley & Larsen and each note payable to the order of respondent. One note is dated November 21, 1908, for $100, one December 2, 1908, for $200, one December 5, 1908, for $100, and one December 16, 1908, for $400, in all aggregating $800 and bearing interest. It is averred that at the several dates of execution of the notes Smiley and *Larsen* were copartners. A fifth separate cause of action averred charges the defendants with money received on the dates aforesaid from the plaintiff to the use of defendants in the sum of $800. The answer admits liability on the first note only. It interposes denials as to the others and also avers that the other notes were made by Smiley, but not for indebtedness of the partnership of Smiley & Larsen, but for indebtedness of Smiley individually or some debt of a prior firm of Smiley & Egan. A verdict in favor of respondent was directed for the full amount claimed.

There was evidence that after authorizing the execution of the first note appellant, *Larsen,* forbade respondent to loan any more money to the copartnership; also that the appellant sold out his interest in the partnership except partnership credits on December 15, 1908, and notified the respondent of this fact before the last note was executed. The question is whether there was any showing made which could, if believed by a jury, have constituted a defense when the foregoing facts were supplemented by the following undisputed facts and circumstances:

Prior to October 19, 1908, the creamery business in question had been conducted by the copartnership of Smiley & Egan. On the date last mentioned appellant bought out Egan's in-

.terest in the tangible personal property of the copartnership and formed a partnership with Smiley whereby Smiley con- ·ducted the creamery business of the firm of Smiley & Larsen as financial manager and superintendent, and the appellant ·conducted his separate blacksmith business or occupation and took no part in the management of the affairs of the new partnership. This copartnership bought milk and cream ·from the adjacent farms and manufactured it into butter and resold such material and manufactured substance in the locality, and also shipped the butter for sale to the larger cities. The copartnership bought on such credit that for goods bought between October 15th and November 1st they would pay on November 15th; for goods bought between November 1st and November 15th on December 1st; for goods bought between November 15th and December 1st on December 15th; and so ·on. These days were also their regular pay-days and this was their mode of paying the expenses of operation. The appellant sold out to one .Mayerl on December 15, 1908, just what he purchased from Egan, leaving the partnership transactions which occurred between October 19th and December 15th unsettled and in the hands of Smiley, with whom no express arrangements were made by appellant regarding liquidation. But appellant did acquiesce not only in the conduct ·of the partnership business during the existence of the copartnership, but also in the liquidation by Smiley of the credits and debits created and incurred by the copartnership. The .appellant took no part in such liquidation and does not know whether there was money on hand or in the bank to pay the liabilities of this short-lived partnership, did not know what ·checks were issued or outstanding, but knew that Smiley had authority to draw checks in the firm name before and after December 15, 1908.

On this point the evidence plainly· shows that, while there was no express agreement to that effect, the appellant ac-·quiesced in the authority of Smiley to liquidate the affairs of

the dissolved copartnership in the same way as he managed them during the existence of the copartnership. The appellant also offered evidence tending to show that, if all the credits of the copartnership had been collected by Smiley and merchandise on hand sold and proceeds properly applied, there would have been no more than enough to pay the partnership liabilities. The total amount of checks drawn on the bank by Smiley & Larsen was $3,328.48, and the total deposits, including the avails of the several notes mentioned, only equaled this sum. The appellant knew of the mode of payments described, according to which there might be one month's firm liabilities in arrears, and he testifies that he knew Smiley was to draw checks for the firm' and expected that the bank would pay such checks. A list of checks of Smiley & Larsen upon the respondent bank was produced and admitted to be practically correct. At the close of business on the second pay-day of the copartnership, viz. December 1, 1908, Smiley & Larsen had a credit balance in their checking account at this bank of only $65.80. This account would have been overdrawn on December 2d were it not for the proceeds of the discount of the note of that day. On December 5th there was a credit balance in this checking account of $83.02, and on December 16th, but for the avails of the note for $400 given to the bank on that day, this account would have been overdrawn $130. After December 15, 1908, this account had credit on account of moneys deposited by Smiley of six items aggregating about $460. On December 1, 1908, Smiley issued checks of the copartnership upon the respondent bank in the sum of about $745 with only $191.48 in the bank to meet the same, and at the close of business on that day the copartnership had a credit balance of only $65.80. The avails of the notes executed on the 2d and 5th of December were credited in this account and paid out on the checks last mentioned. On December 15, 1908, the copartnership had a credit balance of $64.90 in the bank, and on

that day Smiley issued checks of the copartnership on this bank for more than $400 in excess of this credit balance. The next day Smiley went to the bank and gave the partnership note for $400. This amount was then placed to the credit of Smiley & Larsen in the bank and used in paying the copartnership checks issued on and prior to December 15, 1908.

Were it not for the testimony of appellant that he examined the books from time to time and made no objection, it might be considered that the checks on the respondent bank issued and cashed before November 15, 1908, went to pay some other than copartnership liabilities, but prior to the date last mentioned there were also deposits to the copartnership credit, and there is no question but that Smiley had authority to draw checks on the copartnership funds in the bank, and the bank was not called upon to inquire into the consideration for which these authorized checks were drawn. The appellant failed to show that any of these checks were given for other than copartnership indebtedness and the testimony is not in dispute on this point. The fair inference is that if any conversion of copartnership funds was perpetrated by Smiley either in issuing checks during the first month of the copartnership and prior to the first pay-day for other than firm liabilities or in not paying into the bank all the proceeds of copartnership property sold or copartnership credits collected, this was entirely unknown to the bank; but even upon the point that Smiley did so there is nothing more than vague inferences. In all cases Smiley in drawing these checks was acting within his apparent authority as a partner.

With reference to the notes of December 2d and 5th it is not necessary to decide in this case whether, notwithstanding the notice by *Larsen* to the cashier, the sole managing partner had or had not authority to execute these notes. With reference to the note of December 16, 1908, executed the day after *Larsen* sold out his interest in the tangible copartner-

ship property, and after this fact and the request by *Larsen* not to loan any more money to the copartnership were brought to the attention of the bank, we think Smiley had no authority to execute the copartnership note, although there are very respectable precedents to the contrary.    See *Fulton v. Central Bank,* 92 Pa. St. 112.    "After the stoppage of active operations by a partnership or after its dissolution a liquidating partner may give and renew notes to liquidate the partnership indebtedness."    *Meyran v. Abel,* 189 Pa. St. 215, 42 Atl. 122.    But see *Wipperman v. Stacy,* 80 Wis. 345, 50 N. W. 336; *Young v. Tibbitts,* 32 Wis. 79; *Lange v. Kennedy,* 20 Wis. 279; *Gilmore v. Ham,* 142 N. Y. 1, 40 Am. St. Rep. 565, 572, and cases in note; *Potter v. Tolbert,* 113 Mich. 486, 71 N. W. 849, and cases cited; 2 Bates, Partnership, § 694, and cases.    See, also, *Clement v. Clement,* 69 Wis. 599, 35 N. W. 17.

It is well settled that, if the plaintiff would be entitled to recover on the original consideration if the note had not been given, the giving of a note void for lack of authority in the signer or for any other cause does not discharge the preexisting obligation, but the plaintiff may recover upon a cause of action separately stated in the complaint upon the original consideration.    Such was the case of *Thomson v. Elton,* 109 Wis. 589, 85 N. W. 425.    This case is imperfectly reported. There was in the complaint, as shown by the case and briefs on file and the original record, a count upon a municipal bond and another upon the consideration paid to the town therefor. Because of the invalidity of the bond for lack of authority in the signers to bind the town, recovery was allowed upon the original consideration.    This is also decided in *Paul v. Kenosha,* 22 Wis. 266.    *Fry v. Patterson,* 49 N. J. Law, 612, 10 Atl. 390, applies the rule to the case of a promissory note given by one partner without the authority of the other. *Stewart v. Lathrop Mfg. Co.* 95 Tenn. 497, 32 S. W. 464;

*Edgell v. Stanford,* 6 Vt. 551; and *Fitch v. Bogue,* 19 Conn. 285, are also in point.

We entertain no doubt that the copartnership was liable to the bank for checks drawn upon that bank in favor of copartnership creditors and paid by the bank. . This latter liability may be predicated either on the express testimony of the appellant that he knew the checks were being drawn and expected the bank to pay the same, or upon the fact that he left the liquidation of the partnership affairs in the hands of Smiley, thereby authorizing the latter to employ the usual and ordinary business methods of meeting matured liabilities. The partnership creditor receiving one of those checks could maintain an action on it against the firm, so could any one to whom the check was indorsed, and so could the bank, indorsee accepting and paying the same. The notes in question, then, were merely evidence of an existing firm obligation to the bank, and upon any hypothesis that the notes were unauthorized and invalid as notes the respondent was entitled to recover the amount thereof upon the original consideration for which such notes were given. The mere fact that the recovery is in form upon the notes or upon the whole pleading is no sufficient ground for reversing the judgment.

*By the Court.*—Judgment affirmed.

BARNES, J. (*dissenting*). The appellant testified that at the time the first loan of $100 was made he told the cashier of the plaintiff bank not to loan any more money to the firm unless he was present and authorized it. The question is what effect, if any, did such notification have upon the rights of the parties. Independent of such notice the appellant would be liable beyond doubt. I regard the notice as being equivalent to a statement by the appellant that, if loans were made in the future without his consent, he would not be liable therefor. This much I think is fairly impliable from the

language used, and the jury in any event might well have placed such an interpretation thereon.    The evidence does not show that the appellant had any knowledge that his partner, who had active charge of the business, was issuing checks when he had no funds in the bank to meet them or that he was paying firm bills with the proceeds of moneys borrowed from the bank.    On the contrary, there was evidence from which the jury might have found that the firm moneys were more than sufficient to pay all firm debts, had the same been used by the active partner for that purpose, without borrowing a cent.    There is no evidence that *Larsen* had any knowledge that any of the firm funds were being converted by his copartner until after the notes in suit were given and the proceeds thereof had been disbursed to the firm creditors or otherwise.    The question is, under these circumstances, can the plaintiff recover in an action brought on the notes or for money had and received independent of the notes.    The authorities cited in the opinion do not reach what I conceive to be the real point in the case.    Recovery was permitted in the two Wisconsin cases where bonds were held void because the municipality in each instance had in effect vouched for their validity and had used the money derived from their sale for a municipal purpose.    In *Paul v. Kenosha,* 22 Wis. 266, it was said that the case fell under the general rule of law "that where a party sells an obligation which turns out to be valueless and not of such a character as he represents it to be, he is liable to the vendee as upon a failure of consideration." In the cases cited, the parties against whom recovery was sought not only had the use and benefit of the money, but they knowingly accepted and used it.    Here the money was loaned against the protest of the appellant and was expended without his knowledge, or, what is the same thing, the jury might so find.

I do not think it would be seriously contended that, if one person paid the debt of another against his protest and with-

out his knowledge or consent, an action. for money had and received would lie. The payment under such circumstances is voluntary and not recoverable. 1 Parsons, Contracts (9th ed.) 496 (*457) and cases cited; 2 Page, Contracts, § 832, and cases cited; 35 Cent. Dig. sec. 13, pp. 65, 66, and cases cited. As is said by the Massachusetts court: "No one can thus make himself a creditor of another by the unsolicited payment of his debts; and it is not enough to create a liability, that the defendant has had the benefit of the money, by reason of its being expended in his business or in the payment of his debts." *Kelley v. Lindsey,* 7 Gray (73 Mass.) 287. To the same effect see *Stephens v. Board of Ed.* 79 N. Y. 183. A voluntary payment for the benefit of another gives the party paying no right of action against one for whose benefit the payment was made, unless he subsequently ratifies it. *Portage Co. v. Waupaca Co.* 15 Wis. 362; *Clancy v. McEnery,* 17 Wis. 177, 179. To the same effect see citation of numerous cases in 27 Cyc. 838, 839, note 30.

An action for *assumpsit* for money had and received will not lie unless there is an express or an implied promise to support it. *Whitehead v. Peck,* 1 Ga. 140; 27 Cyc. 841, and cases cited, note 44. It would be paradoxical to imply a contract where a party expressly refused to make one.

Unless there is something in the relation of parties as partners whereby one of them has the right to bind the other against his protest, the verdict was improperly directed. The authorities are to the contrary. It is well settled that one partner may exempt himself from future liability by giving express previous notice to a third person that he will no longer be bound for notes or drafts drawn by his copartners in the name of the firm. *Matthews v. Dare,* 20 Md. 248, 273; *Maltby v. N. W. Va. R. Co.* 16 Md. 422.

"It is a well established principle that the contract of a partner is obligatory on his copartner by virtue of an implied authority, which may be rebutted by a refusal to be bound by

his acts.    By legal consequence, the partner whose authority is thus declined cannot bind the copartnership in favor of those who have knowledge of this fact. . . . Nothing can be more reasonable than that a person may protect himself in this manner against the fraud and misconduct of his associate."    *Leavitt v. Peck,* 3 Conn. 124.

"Both in England and the United States there are cases which assert the general proposition that a partner may protect himself against the consequences of a future contract by giving notice of his dissent to the party with whom it is about to be made. . . . And where the firm consists of but two persons, and there is nothing in the articles to prevent each from having an equal voice in the direction and control of the common business, the correctness of the proposition cannot be questioned.    In such case the duty of each partner would require him not to enter into any contract from which the other in good faith dissented; and if he did it would be a violation of the obligations which were imposed by the nature of the partnership.    It would not, in fact, be the contract of the firm; and the party with whom it was made, having notice, could not enforce it as such."    *Johnston v. Dutton's Adm'r,* 27 Ala. 245, 252.

"The authority of one partner to bind another by signing bills of exchange in their joint names is only an implied authority, and may be rebutted by express previous notice to the party taking such security from one of them, that the other would not be liable for it.    And this, though it were represented to the holder by the partner signing such security that the money advanced on it was raised for the purpose of being applied to the payment of partnership debts, and though the greater part of it were in fact so applied.    Nor can he recover against the other partner the amount of the sum so applied to the payment of the partnership debts against such notice."    ELLENBOROUGH, C. J., in *Gallway v. Mathew,* 10 East, 263, 1 Campb. 403.

The partnership relation makes each partner the agent of the others when acting within the scope of his power, but when the agency is denied and his act forbidden by his copartner, with notice to the party assuming to deal with him as agent of the firm, the act is his individual act and not that of the firm.    *Yeager v. Wallace,* 57 Pa. St. 365.

Where a laborer does work which inures to the benefit of the firm, with knowledge of the fact that there is an agreement between the partners that one of them shall pay for such labor, recovery cannot be had against the other partner. *Urquhart v. Powell,* 54 Ga. 29; *Pollock v. Williams,* 42 Miss. 88; *Nolan v. Lovelock,* 1 Mont. 224.

Other cases holding that, where one person deals with a member of a firm with knowledge of the equities of another partner, he is bound by such knowledge and cannot recover against the partner in whose favor the equities exist, if he disregards the same, are: *Radcliffe v. Varner,* 55 Ga. 427; *Knox v. Buffington,* 50 Iowa, 320; *Combs v. Boswell,* 1 Dana (31 Ky.) 473; *Williams v. Barnett,* 10 Kan. 455; *Wilson v. Richards,* 28 Minn. 337, 9 N. W. 872; *Cargill v. Corby,* 15 Mo. 425; *Boardman v. Gore,* 15 Mass. 332; *Monroe v. Conner,* 15 Me. 178; *Bromley v. Elliot,* 38 N. H. 287; *Baxter v. Clark,* 26 N. C. 127; *Minnit v. Whinery,* 5 Brown's Cas. in Parl. 489; *Rooth v. Quin,* 7 Price, 193; *Willis v. Dyson,* 1 Starkie, 164.

In principle the foregoing decisions are right. No one has any right to arrogate to himself the right to pay the debt of another without his consent and against his protest, unless it be the intention of the party paying to make a donation. Otherwise he is simply meddling in affairs which do not concern him. It is the right of the debtor to pay his debt at the time and in the manner he chooses, in so far as third parties are concerned. The money having been loaned in violation of the express command of appellant, the debt did not become his, but was solely that of his copartner who negotiated the loan. The plaintiff, having made the loan after being forbidden so to do, should not be permitted to recover from *Larsen.* If Smiley paid the debt to the bank he might have an accounting and settlement with *Larsen,* wherein their rights and equities would be adjusted, but I cannot see where there is any privity between *Larsen* and the bank, assuming the testimony of the latter to be true. Surely Smiley had no im-

plied authority to violate the law by issuing firm checks when there were no available funds to meet them. The issue of such checks did not affect the bank on which they were drawn. Its duty to refuse payment thereof was plain and obvious. It was not called upon to disregard *Larsen's* instructions, and offers no excuse for so doing. I think the jury should have been permitted to pass upon the issue raised, and, if it found in appellant's favor, that appellant would be entitled to relief against all of the indebtedness evidenced by the notes except the first one.