## PAUL VS. THE CITY OF KENOSHA.

*Failure of consideration; recovery of money paid for void city bonds.*

1. Plaintiff purchased of a city its bonds, which were void for want of power in the city to issue them.   *Held*, that he was entitled to recover the amount paid, as for a failure of the consideration.
2. It was not necessary for plaintiff to return, or offer to return, the void bonds.

APPEAL from the Circuit Court for *Kenosha* County.

The plaintiff declared upon three $500 bonds of the city of Kenosha (numbered 3, 4 and 5), with coupons attached, alleged to have been made September 1st, 1857, under chap. 133, Pr. & L. Laws of 1857, signed by the mayor and clerk, and sealed with the seal of the city, payable to Josiah Bond or bearer, to aid the Kenosha & Rockford R. R. Co. in the construction of its road.   The complaint avers that in September, 1857, at defendant's request, plaintiff purchased of defendant said bonds and coupons, and paid defendant $1500 therefor, and defendant thereupon delivered them to him as good and valid bonds and coupons, and binding upon it, and plaintiff, believing them to be such, received them as afore-

said, and now hold and owns them as his property. It is then alleged that defendant afterwards paid one year's interest on each of said bonds by taking up the two coupons on each first to be paid, but that other coupons, calling for $675, are past due and unpaid, and that payment has been demanded and refused, etc. It is further alleged that the money so paid to defendant by plaintiff was solicited and received by defendant solely for its legitimate municipal purposes; that " defendant then and there asserted to plaintiff that said bonds were worth $500 each, and claimed to own and hold said bonds as its own municipal property, to aid in its municipal affairs, and plaintiff, then and there relying upon such assertions of defendant, advanced to said city the several sums of money above named;" that the money was placed in the treasury of the city with its other money and funds kept and used for municipal purposes, and was wholly used for such purposes. There was another count, in the nature of an *indebitatus assumpsit* for $3,000, " for money by the plaintiff before that time paid, laid out and expended to and for the defendant's use and at its request, and for city scrip and city orders and promissory notes issued by the defendant, sold and delivered to defendant at its request, and for money had and received by defendant to and for the use of plaintiff, and for the use and interest of said several sums of money."—In obedience to an order, the plaintiff served a bill of particulars, as ' follows : " The plaintiff, on or about the 3d of October, 1857, sold and delivered to defendant at its request, city orders, sometimes called city scrip, issued and put in circulation by said city for the purpose of defraying its municipal expenses, to the amount and value of $881. * * Also, the plaintiff, on or about said 3d of October, 1857, at the request of the defendant, advanced to the defendant for municipal purposes money to the amount of $394. Plaintiff will also prove on

the trial that defendant is indebted to him for the interest on the several sums hereinbefore stated, from said 3d of October, 1857." The answer is substantially a general denial, with an allegation that the bonds above mentioned were issued and sold without authority of law, and had been fully paid and satisfied before they came into plaintiff's possession.

On the trial, the bonds and coupons declared on were put in evidence; defendant objecting, on the grounds that they were not mentioned in the bill of particulars, and that they were issued and delivered to plaintiff without authority of law. They were dated September 21, 1857, signed by the plaintiff as mayor of the city, and countersigned by one West as city clerk. One Lewis, for the plaintiff, testified that he was defendant's clerk and had been since 1858, and that he had examined its books and records to see whether there were any records relating to the sale and transfer of these bonds by the city, and did not find any such. One Hanson, for the plaintiff, testified that he was treasurer of the city of Kenosha from 1853 to 1859; that during 1857 the city issued its bonds for about $100,000 to the Kenosha & Rockford R. R. Co., to aid in the construction of its road; that they were issued in pursuance of a law and ordinance of said city, with the signatures of the mayor and clerk and the corporate seal; that they were all made payable to Josiah Bond or bearer, and all delivered to the Kenosha & Rockford R. R. Co. Witness further testified, against objection, that the city afterwards became owner of five of the bonds, for $500 each, numbered 1 to 5; that he (witness) as city treasurer, by defendant's direction, disposed of said five bonds, three of which he sold to plaintiff in the latter part of 1857; that it was his impression that plaintiff paid him 80 to 85 cents on the dollar, $175 in the coupons attached to said bonds, and the balance in money and cur-

rent scrip, issued by the city for municipal purposes; that said scrip was canceled to witness' credit, like other city scrip, on his settlement with the city, and the money was used by the city as a part of its general funds. Witness further testified that the city had neglected to make provision for payment of the interest on its bonds, and that plaintiff had called upon him once or twice to see whether such provision had been made. On cross-examination, the witness testified that it was his impression that in consideration of the city allowing the coupons which were partly matured to remain on the bonds [when they were issued to the railroad company], and assuming the payment of certain interest, the five bonds above mentioned were returned to the city, which received them of the company at eighty cents on the dollar; that it was his impression that the authority given him by the city council to sell said bonds was a matter of record in the city clerk's office, and was a resolution of the common council acting as such, passed in October or December, 1857; that plaintiff did not pay more than $300 in money, and witness thought from $200 to $300; that some of the scrip delivered to him by plaintiff for the bonds was of then recent issue, and none of it more than a year old; that a certain sum was allowed the mayor for services in executing the bonds, and witness was not sure that scrip was issued therefor, but had embraced the amount in his statement as to the amount of scrip delivered to him by plaintiff; that he thought the mayor, as such, was not at that time entitled to any salary; that the five bonds above mentioned, when they came back to the city, were surrendered or delivered to him (witness), and he gave a receipt for them to the railroad company; that he could not refer to any act or resolution of the common council from which he obtained the impression that the bonds were sold to plaintiff to procure means for municipal purposes.

On re-direct examination, witness stated that the sum allowed plaintiff as mayor for special services in executing the bonds was $100; that it was allowed by the railroad company, and paid by it to the city in this transaction [the return of the bonds to the city.] It appeared further that plaintiff was mayor of said city from the spring of 1857 to the spring of 1859.

The court found that defendant executed and delivered the three bonds in question, and the coupons, along with other bonds, to the Kenosha & Rockford R. R. Co. in September, 1857; that said company, in payment for interest which had accrued on said bonds when so delivered, and of certain expenses which had been incurred by the city in and about the execution of the same (including $100 allowed plaintiff as mayor), re-delivered to defendant five bonds of $500 each, and coupons—three of which were the bonds described in the complaint; that defendant sold to plaintiff the three bonds last above mentioned, with coupons, in the latter part of 1857, at 80 cents on the dollar, or for $1,200; that plaintiff paid therefor $175 in coupons attached to said bonds, and the balance in cash and city scrip; that the cash so paid (from $200 to $300) was placed in defendant's treasury and used for ordinary municipal purposes, and the scrip had theretofore been issued for ordinary municipal purposes, except $100 of it, which had been issued to plaintiff for signing bonds as aforesaid. As conclusions of law, the court held, that said three bonds and the coupons attached were null and void, and of no value whatever; that the scrip issued to plaintiff for signing bonds was also void; that the plaintiff was entitled to judgment for the sum paid by him for the bonds, less said two amounts of $175 and $100, i. e., for $926, with interest, etc. Judgment accordingly; from which the defendant, after excepting to the several findings of fact and conclusions of law, appealed.

*O. S. & F. H. Head,* for appellant:

1. The complaint, without stating that the bonds are illegal or void, or that they have been rescinded, or are not a present legal demand against the defendant, asks for a judgment for the consideration paid therefor. This plaintiff cannot have without returning, or offering to return them. 11 Wis., 194. 2. The court has given a judgment upon the validity of the bonds, which is outside of the case; and this is error. 3. If the bonds are void for want of authority in the city to issue them, plaintiff is *particeps fraudis,* and must be held to have had notice of their invalidity; and cannot recover the money paid for them. 9 Cow., 674; 2 Denio, 26. 4. If they are void because they had answered their purpose and been returned to the city as paid, plaintiff, who was mayor of the city, was cognizant of all the facts, and a party to them, and cannot take advantage of his own wrong. 1 Wend., 355; 2 East, 470; 23 Pick., 283; 1 Cush., 271. He cannot as a private person shield himself from liability for the knowledge which he had as an officer. *L'Amoreaux v. Vandenburg,* 7 Paige, 316. 5. Mere inadequacy of consideration is no defense. The city has paid a portion of the interest on these bonds, so that the consideration has not wholly failed. Even if plaintiff, had he given his note in payment for the bonds, could have pleaded a failure of the consideration in answer to a suit on the note, yet he cannot recover the money paid. 2 Hill, 606, and cases there cited. 6. The evidence shows no knowledge or action of the city council in regard to the transaction, no request of defendant to plaintiff to purchase bonds or advance money. 11 Ad. & El., 438; *Ingraham v. Gilbert,* 20 Barb., 151.

*N. H. Joy,* for respondent. [No argument on file.]

CoLE, J. Under the circumstances, we consider the objection that the plaintiff could not recover the considera-

tion paid for the city bonds, without offering to return them to the city, as untenable. The suit was against the city which issued the bonds; and the bonds were put in evidence, and declared void and of no value whatever by the circuit court. What further purpose or use can the bonds be put to? They are canceled. We are really at a loss to imagine what earthly benefit the possession of the bonds would be to the city. Perhaps, if the city had asked that the bonds be delivered over to its possession after the court had held them to be null and void, the court might have so ordered; although it would seem to be an idle act.' But no request of the kind was made, and we cannot see how the city can possibly be prejudiced by the bonds remaining with the record and papers in the cause. The court held that the plaintiff was entitled to a judgment for the amount paid for the bonds—less the $175 paid in coupons, and the $100, paid in city scrip, which was allowed the plaintiff for signing the bonds. In other words, the plaintiff was permitted to recover the amount of money and scrip which had been issued for municipal purposes, and which had been paid the city by him for bonds which were of no value. What valid objection can there be to a judgment against the city to that extent? The city has had that amount of money and legal scrip for its city bonds, which turn out to be of no value whatever. It seems to fall under the general rule of law, that where a party sells an obligation which turns out to be valueless and not of such a character as he represents it to be, he is liable to the vendee as upon a failure of consideration. The city bonds, it appears, were void when the agents of the city sold them to the plaintiff. Is it just and equitable that the city retain the money which it has received for its own worthless bonds? The plaintiff took the bonds upon the presumption that they were valid securities, and paid his money, or its equivalent, to the city

for them.    They turn out to be void for want of power on the part of the city to issue them; and he seeks to recover back the money paid as upon a failure of consideration. Can he not recover the amount he has. paid the maker of the bonds for its worthless paper?    It seems to us unnecessary to go into the authorities upon the question.    The principle has been fully discussed in *Hurd v. Hall*, 12 Wis., 112; *Lawton v. Howe*, 14 id., 241; *Costigan v. Hawkins* [*ante*, p. 74.]    Upon the ground, therefore, that the amount recovered was paid upon a consideration which has failed, we think the judgment right.

*By -the Court.*—The judgment of the circuit court is affirmed.