HENRY T. CLARK, PLAINTIFF IN ERROR, V. BOARD OF COUNTY COMMISSIONERS OF SALINE COUNTY, DEFENDANT IN ERROR.

1. **Selection of Jurors.** County commissioners must select jurors from the several precincts in the county in proportion to the number of persons therein competent to serve on grand and petit juries, and if they fail to do so it is good cause for challenge to the array.

2. ———. The commissioners should not select the same persons for successive terms of court, the intention of the law being that no person shall be required to serve as a juror a second time until all qualified persons shall have served respectively in rotation.

3. **Bridge:** ACTION AGAINST COUNTY: GRANT BY STATE. In 1869 the legislature passed an act donating to Saline county 5,000 acres of land to aid in erecting a bridge across the Blue river. The county received a conveyance of the land, and let the contract for the erection of the bridge to one H., conveying to him the land in question, and paying $500 in money in payment of the same. Before any part of the contract was performed H. assigned it to C., and conveyed the land to him.

The commissioners then changed the plans of the bridge, paying C. $1000 additional, and changed the location, to which C. consented. C. erected the bridge, which was accepted. The title to the lands having failed in consequence of the state having no title to the same, *held*, that C. was entitled to recover the actual value of the bridge.

ERROR to the district court of Saline county. Tried there before POUND, J., sitting in the absence of WEAVER, J.

*O. P. Mason* and *J. R. Webster*, for plaintiff in error.

1. For the selection of a jury there can be no proper mode but that fixed in the statute, and that should be pursued, and upon this the following and many others are instructive cases showing the jealousy with which this subject is viewed. *State v. De Rocha*, 20 La Ann., 356. *McDonald v. Shaw*, Coxe, N. J., 6. *People v. Coyodo*, 40 Cal., 586. *Wright v. Stewart*, 5 Blackf., 120. *State v. McQuaige*, 5 Rich., S. C., 449. *Gardner v. Turner*, 9 Johns., 261. *Gladden v. State*, 13 Fla., 623. *Quinnebaug Bank v. Tarbox*, 20 Conn., 510. *Hugg v. Kille*, 2 Halstd., N. J., 435. *Straughan v. State*, 16 Ark., 37. *Woods v. Rowan*, 5 Johns., 133. *Vanauken v. Bremer*, 1 South., N. J., 364. *Morgan v. State*, 20 La Ann., 442. *State v. Pratt*, 15 Rich., 47.

2. The contract after novation was the contract between the defendant and Clark. The consideration moving to the county moves from Clark. The claim upon a *quantum meruit*, after failure of the consideration for his work and material, accrues to him and not to Hunt; for there is no contract longer after novation between the original parties, whatever may be the relations between Hunt and Clark; even though Clark should be a trustee to Hunt, it is not Hunt who could claim from the county. Even had the deed of the county contained in form a full warranty of title, this would

still be the case, for the covenant would be *ultra vires.*
*Low v. Townsend,* 11 Gill and J., 407.    *Lawrence v. Dall.,*
3 John. Ch., 23.    S. C., 17 Johns., 37.    And the county
is bound to pay upon a *quantum meruit* where it has
obtained money, service, or material without payment.
*Pimental v. San Francisco,* 21 Cal., 361, 362.    *Argenti
v. San Francisco,* 16 Cal., 282; and City Slip cases, 26
Cal., 591.    *Paul v. Kenosha,* 22 Wis., 266.    *Armstrong
v. Clarion,* 66 Penn. St., 218.    *Wait v. Ormsby Co.,* 1
Nev., 370.    *Dill v. Wareham,* 7 Met., 438.    *Haydon v.
Madison,* 7 Greenlf., 118.    *Atkins v. Barnstable,* 97
Mass., 428, 429.    *Wheeler v. City,* 24 Ill., 105, 107.
*Seagraves v. City,* 13 Ill., 366, 371.    *Norway v. Clearlake,*
11 Iowa, 506, 508.    *Knowlton v. Plantation,* 14 Me., 20.

*Hastings & McGintie,* for defendant in error.

1.    The provisions of the statute in regard to draw-
ing juries are directory merely, and a substantial com-
pliance with its requirements is sufficient.    *State v.
Carney,* 20 Ia., 82.    *Haight v. Holly,* 3 Wend., 258.
*State v. Howard,* 73 N. C., 437.    And in the absence of
any wrong motive in the selection of a jury an infor-
mality therein is no ground for reversal.    *State v.
Breen,* 59 Mo., 413.

2.    To create a novation the new contractor must
bind himself in place of the old one, and the latter
must be expressly discharged.    *Scott v. Atchison,* 36
Tex., 76.    *Jacobs v. Calderwood,* 4 La., 509.

3.    There could not have been a novation of con-
tract, nor was there any failure of consideration what-
ever as between plaintiff and defendant, consequently,
in any view of the case, the question of compensation
upon *quantum meruit* falls to the ground; besides,
where there is an express contract for a stipulated
amount and mode of compensation for services, the

plaintiff cannot abandon the contract and resort to an
action for a *quantum meruit* on an implied assumpsit.
14 Johns., N. Y., 326. 18 Johns., N. Y., 169. 10
Serg. and R., 236.

MAXWELL, CH. J.

The petition states in substance that the state of Ne-
braska, by an act of the legislature, approved February
15, 1869, donated to the county of Saline 1,000 acres
of internal improvement land to aid the county in the
erection of a bridge across the Blue river, said lands
being conveyed to the county in March, 1869; that
said lands were valued at the sum of $5000, and were
conveyed to one Hunt, who had contracted to build
said bridge, and had given bond for the completion of
the same, he being paid the further sum of $500; that
on or about the fourth day of October, 1870, and be-
fore the construction of any portion of said bridge, the
plaintiff took· an assignment of said contract from
Hunt, and received a conveyance of said land from
him, and that the commissioners made a novation of
said contract, whereby the plaintiff was to erect the
bridge, and the commissioners then desiring to change
the plan of the bridge from a Killian to a Howe truss,
made said contract with the plaintiff, and paid him
therefor the sum of $1000 additional; that the com-
missioners thereafter changed the location of said
bridge to the section line between sections 28 and 29,
in township 8 north, in said county, at which point
the plaintiff erected said bridge, and the same was
duly accepted; that said bridge was 100 feet in length,
and the approaches to the same 108 feet in length;
that said bridge was of the value of $6160, and that
the support to the bridge was worth the sum of $500;
that the title to said lands wholly failed, neither the

state of Nebraska nor Saline county having title to the same; wherefore the plaintiff prays judgment for the value of the bridge less the amount already paid. The defendants demurred to the petition upon the ground that the facts stated therein were not sufficient to constitute a cause of action. The demurrer was submitted to the court at the May term, 1875, and taken under advisement, but no decision appears to have been had thereon. In June, 1878, the defendants filed an answer, wherein they allege in substance that they entered into a contract with Hunt for the erection of said bridge, and conveyed to him by quit claim deed the interest of the county in said lands, and that the only contract entered into with the plaintiff was that in relation to the Howe truss, and that said bridge was built of poor material, and not properly constructed, and had to be replaced in November, 1877, and was not worth to exceed $1000, and deny all the other allegations of the petition. The reply consists of a denial of the new matter set up in the answer. On the trial of the cause the jury returned a verdict in favor of the defendant, upon which judgment was rendered. The plaintiff brings the cause into this court by petition in error.

It appears from the bill of exceptions that the plaintiff challenged the " panel and array of the petit jury impaneled and summoned to try the issues joined between the plaintiff and defendant," because the county commissioners did not " select sixty persons having the qualifications of jurors in a number as near as may be proportionate from each precinct in the county," etc. And also that one, Hall, had been drawn and acted as juror at the last term of the court. The motion was supported by an affidavit, which is not denied, and also by a copy of the original canvass of the votes at the last general election in Saline county, from

which it appears that the whole number of votes polled in said county at said election was, 2345. The motion to quash was overruled, to which the plaintiff excepted, and now assigns the same for error.

Section 658 of the code of civil procedure provides that "in each of the counties of this state, where a district court is appointed or directed to be holden, the county commissioners of the county shall, at least fifteen days before the first day of the session of the court, meet together, or any two of them may meet, and select sixty persons possessing the qualifications prescribed in section 657, and, as nearly as may be, a proportionate number from each precinct in the county, and shall, within five days thereafter, furnish to the clerk of the district court of the county, or his deputy, a list of the names of the persons selected." Gen. Stat., 642.

Section 659 provides that "the clerk or deputy clerk receiving the names shall write the name of each person selected on a separate ticket and place the whole number of tickets into a box or other suitable and safe receptacle, and shall preserve the names furnished by the commissioners in the files of his office." Gen. Stat., 642.

Section 660 provides that "the clerk of the district court or his deputy, and the sheriff, or if there is no sheriff the deputy sheriff, or if there is no deputy sheriff the coroner of the county, shall, at least ten days before the first day of the session of the district court, meet together and draw by lot out of the box or receptacle wherein shall be kept the tickets aforesaid, sixteen names, and the persons whose names shall be drawn shall be grand jurors; and the clerk and sheriff shall then draw twenty-four additional names, and the persons whose names are drawn shall be petit jurors." Gen. Stat., 643.

These provisions are mandatory, and are designed to secure as far as possible fair, unbiased juries. As was said in *Burly v. The State*, 1 Neb., 396, the grand jury must be selected in the manner prescribed by law. There is no security to the citizen but in a rigid adherence to the legislative will as expressed in the statute. See also *Preuit v. The State*, 5 Id., 377. *McElvoy v. The State*, ante p. 157. As the petit jury is drawn from the same list as the grand jury, the importance of making the selection in the manner provided by law will at once be seen. The commissioners have no discretion in the matter. Jurors are to be selected from the several precincts of the county in proportion to the number of persons therein competent to serve on grand and petit juries. Any other construction would permit the commissioners to select the jury from any particular portion of the county they saw fit, which in times of excitement, or when the interests of that locality or the county were involved, might become the means whereby the process of the court would be used for the perpetration of wrong and injustice. The affidavit filed in this case, however, fails to state the whole number of persons competent to serve on grand and petit juries in the several precincts of the county, and is therefore insufficient. The list of votes cast in the several precincts, without an allegation that those voting were all the persons therein competent to serve as jurors, is not sufficient to justify the court in setting aside the panel. It must affirmatively appear that the apportionment was not properly made. The motion was therefore properly overruled.

There is no direct allegation that the M. W. Hall summoned as a juror at the October term is the same person summoned as a juror at the April term. Whether he is the same person or not is susceptible of

positive proof, and it is not sufficient to state that the affiant has made inquiry and is informed that such is the fact. The commissioners, however, should not select the same persons for successive terms of court. The design of the statute is that no one person shall be required to serve on a jury a second time until all qualified persons shall have served respectively in rotation.

The remaining objections may be considered together. The plaintiff took an assignment of the contract for the erection of the bridge in question with at least the tacit consent of the commissioners. He constructed the bridge in accordance with the change in plans and location made by them; that the bridge was properly accepted there is not a shadow of a doubt from the testimony. No objection is made to the contract, and it is admitted that the title to the lands conveyed to the plaintiff has entirely failed. Is the plaintiff therefore entitled to be paid the fair value of the bridge at the time of its completion?

In the case of *Pimental v. City of San Francisco*, 21 Cal., 362, where certain real estate belonging to the city had been sold under a void ordinance, and the proceeds paid into the city treasury, the title having failed, and action brought against the city for the recovery of the money paid, the court say: "The liability of the city arises from the use of the moneys or her refusal to refund them after their receipt. The city is not exempted from the common obligation to do justice which binds individuals. Such obligations rest upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property which does not belong to her it is her duty to restore it, or if used, to render an equivalent therefor, from

the like obligation.  *Argenti v. San Francisco*, 16 Cal.,
282.  The legal liability springs from the moral duty
to make restitution.  And we do not appreciate the
morality which denies in such cases any rights to the
individual whose money or other property has been
thus appropriated.  The law countenances no such
wretched ethics; its command always is to do justice."

In the case of *Paul v. The City of Kenosha*, 22 Wis.,
266, the plaintiff had purchased certain bonds of the
city, which were void for want of power to issue them.
It was held that he was entitled to recover the amount
paid.  The court say: "The city has had that amount
of money and legal scrip for its city bonds, which turn
out to be of no value whatever.  It seems to fall un-
der the general rule of law that when a party sells an
article which turns out to be valueless and not of such
a character as he represented it to be, he is liable to
his vendee as upon a failure of consideration.  The
city bonds, it appears, were void when the agent of the
city sold them to the plaintiff.  Is it just and equita-
ble for the city to retain the money which it has re-
ceived for its own worthless bonds?"

In the case of the *Bridge Company v. Frankfort*, 18
B. Monroe, 41, the bridge company was requested by
the city authorities to state the terms upon which the
city might attach its water pipes to the bridge to carry
the water from one side of the river to the other.  The
company answered, stating its terms, upon which the
city council took no action, but proceeded to extend
the water works and used the bridge.  It was held that
the city was liable.    Judge Dillon thus states the rule:
"If the officers or agents of a municipal corporation,
acting under ordinances which are void, make sales
and deeds of corporate property which pass *no* right to
the purchaser, and can never ripen into a title, and
receive the purchase money and place the same in the

treasury · of the corporation, which *appropriates* the money to its own use by virtue of ordinance or resolutions legally adopted, the purchaser may recover back the purchase money." Dillon on Mun. Cor., section 750. Is there any difference in this regard between a void ordinance and a void statute? The result is the same in each case—no right or title passes by the conveyance. The purchaser is therefore entitled to recover the purchase money. Can it make any difference that the purchase price was the erection of a public bridge for the county instead of money? We think not. We place no stress upon the form of the deed, as the county commissioners had no authority to bind the county by a warranty. But both the county and the purchaser supposed at the time of the conveyance that the county had title. The failure of the title, therefore, rests upon the same foundation as though the county had sold any other property to which it had no title. The plaintiff expended his time and money in the performance of a valid contract, entered into with the proper officers of the county; the county has received the benefit of such money and labor, and justice requires that he should be paid the fair value of the same. It follows that the judgment of the district court must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.