JOHN B. TURNER, CHIEF JUSTICE.
JESSE J. DUNN,
SAMUEL W. HAYES,      } JUSTICES.
MATTHEW J. KANE,
R. L. WILLIAMS,

## SUPERIOR MFG. CO. v. SCHOOL DIST. NO. 63, KIOWA COUNTY.

No. 685.  Opinion Filed November 16, 1910.

Rehearing Denied March 21, 1911.

(114 Pac. 328.)

1.  **SCHOOLS AND SCHOOL DISTRICTS—Limitation of Indebtedness—Statutory Provisions.** Under the provisions of section 4 of an act of Congress approved July 30, 1886 (24 Stat. 171, c. 818), a school district of a territory cannot become indebted in any manner or for any purpose to any amount which in the aggregate, including existing indebtedness, exceeds 4 per centum of the value of the taxable property within such school district, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness; and any contract entered into by its officers in violation of this section is void.

2.  **SAME—Acceptance of Benefits—Liability of District.** Where the aggregate indebtedness of a school district, located in a territory, is in excess of 4 per centum of the value of the taxable property within such school district as shown by the last assess-

ment for territorial and county taxes, the acceptance, retention, and use of furniture or supplies by the officers of such school district in its behalf will create no liability against the district for the value of the same.

(Syllabus by the Court.)

*Error from Kiowa County Court; J. W. Mansell, Judge.*

Action by the Superior Manufacturing Company against School District No. 63, Kiowa County. Judgment for defendant, and plaintiff brings error. Affirmed.

*Morse & Standeven* and *James H. Wolverton,* for plaintiff in error.

*Thomas W. Conner,* for defendant in error.

DUNN, C. J. This case presents error from the county court of Kiowa county, being originally brought in that county by plaintiff in error as plaintiff to recover judgment against the defendant in error as defendant for $175.40 with 6 per cent. interest from the 2d of September, 1903. The petition is in two counts; the first being upon a warrant issued and delivered by defendant to the plaintiff to cover the purchase price of certain school supplies and furniture sold and delivered to the defendant, and the second count is for the value of the said property which was delivered and received by the defendant and which it still retains and uses.

It is conceded on the part of counsel for plaintiff in error that under the rule of this court, in the case of *Ray v. School District No. 9, Caddo County,* 21 Okla. 88, 95 Pac. 480, it is not entitled to recover upon the warrant issued; but it is insisted that it is entitled to recover a judgment against the district for the value of the property which it delivered and which the district received, retained, and still uses. At the time this property was sold and delivered to the school district, Oklahoma was a territory, and the defense to the action is made that plaintiff cannot recover on either count by reason of the provisions of section 4 of the act

of Congress approved July 30, 1886 (24 Stat. 171, c. 818), commonly known as the "Harrison act," and which provides:

"That no political or municipal corporation, county, or other subdivision in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum of the value of the taxable property within such corporation, county, or subdivision, to be ascertained by the last assessment of the territorial and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by such corporation shall be void. * * * *"

It is conceded that, at the time of the purchase and delivery of the furniture, the price or value of which is herein sued for, the defendant school district was indebted in an amount in excess of the 4 per cent. above mentioned. Notwithstanding this, however, it is the contention of counsel for plaintiff that the officers of the school district could not purchase and the district receive, retain, and use the furniture without being liable. And a number of authorities are cited in support of the proposition that the obligation to do justice rests upon all persons, natural and artificial, and that if the school district obtained the money or property of others without authority of law, independent of any contract, it would be compelled to make restitution or compensation. *Marsh v. Fulton County,* 10 Wall. 676, 684, 19 L. Ed. 1040, 1042; *Louisiana v. Wood,* 102 U. S. 294, 299, 26 L. Ed. 153, 155.

The facts and the law involved in these cases, however, are such as do not render them an authority to sustain in all particulars the contention which plaintiff here advances. Nor is plaintiff's contention sustained by the case of *Hitchcock v. Galveston,* 96 U. S. 341, 24 L. Ed. 659, for in that case the Supreme Court of the United States, referring to the terms of the charter of the city alleged to have been violated, holds that the provision involved could not have been intended to prohibit incurring an indebtedness exceeding the sum named; that it was in no sense a limitation of the debt of the city. The rule laid down in the

case of *Pittsburgh, Cincinnati & St. Louis Ry. Co. v. Keokuk & Hamilton Bridge Co.*, 131 U. S. 371, 9 Sup. Ct. 770, 33 L. Ed. 157, relating to the *ultra vires* contracts entered into by officers of private corporations where the concern has accepted and is enjoying the benefits, is as follows:

"According to many recent opinions of this court, a contract made by a corporation, which is unlawful and void because beyond the scope of its corporate power, does not, by being carried into execution, become lawful and valid, but the proper remedy of the party aggrieved is by disaffirming the contract and suing to recover, as on a *quantum meruit*, the value of what the defendant has actually received the benefit of."

But this rule has, so far as our investigation has gone, never been extended to the point of creating an obligation against a municipal corporation to pay the value of goods, supplies, or other property, although it has received and retained them where the same exceeded the legal limit of its debt-incurring power.

The language of the statute invoked is that a municipality shall not "become indebted in any manner or for any purpose." This same language is used in the Constitution of Illinois (section 12, art. 9), and received a construction at the hands of the Supreme Court of that state in the case of *City of Springfield v. Edwards*, 84 Ill. 626. Referring to this particular language, the court in the opinion says:

"There is no difficulty in ascertaining the natural signification of the words employed in the clause of the Constitution under consideration, and to give them that meaning involves no absurdity or contradiction with other clauses of the Constitution. The prohibition is against becoming indebted—that is, voluntarily incurring a legal liability to pay, 'in any manner or for any purpose', when a given amount of indebtedness has previously been incurred. It could hardly be probable that any two individuals of average intelligence could understand this language differently. It is clear and precise, and there is no reason to believe the convention did not intend what the words convey."

In other words, this language is intended as a limitation absolute and is for the protection of the taxpayers against any lia-

bility on contracts or purchases made on behalf of the municipality by its agents or officers, beyond an amount certain. After that point is reached, they are powerless and cannot in any manner or for any purpose burden it with any greater. It is manifest at a glance that to yield to the contention of counsel for plaintiff would virtually wipe out the protection intended by this statute, because, if the district could be made liable to any extent in excess of the legal limit for the value of property received, this would be one manner of creating indebtedness, and would be the manner to which resort would always be made whenever the necessity or desire to evade the law existed. And in such cases the more the actual danger of excessive indebtedness, and the greater the need for the protection afforded by the act, the greater would be the certainty of its being evaded and an enforceable liability incurred. One of the statutes of Illinois provided that the authorities of a school district might appropriate to the purchase of libraries and apparatus any surplus funds, after all necessary school expenses were paid. A district, prior to the existence of the conditions named in the statute, purchased a library, which was by the district received and used. On the district repudiating the contract, the party who sold the library contended that, having received and enjoyed it, the district was bound to pay its value. The Supreme Court of that state, in the case of *Clark et al. v. School Directors, etc.,* 78 Ill. 474, considering this contention, said:

"The authority given to school directors by statute to 'appropriate to the purchase of libraries and apparatus any surplus funds, after all necessary school expenses are paid,' is a limitation of their power to make such purchases to the circumstances named, and is an implied restriction of any power to purchase generally on credit. A purchase of such articles by the school directors on a credit, where it does not appear that there were any surplus funds, after all necessary school expenses were paid, applicable to such purchase, is void, and there is no contract implied by law to pay for articles thus purchased, arising from their receipt and use.

The only remedy of the seller, under such circumstances, is to claim the property itself."

An exhaustive examination of the authorities on this subject discloses that, while courts have been astute to require and compel private corporations to pay for property purchased *ultra vires* by their agents and officers, where it has been of value and retained and used, they have guarded zealously the rights of taxpayers under statutes similar to the one we are now considering, and have with practical unanimity held that persons dealing with public officers of municipalities do so at their peril and are charged with full knowledge of the rights and powers of these agents and officers to make contracts which will bind their principals. The question has arisen in almost every conceivable form; but the conclusion reached by the courts has been one, and that to relieve the municipality of any liability whatsoever, either on the contract or for the actual value of the property delivered and received.

In the case of *Salt Creek Township v. King Iron Bridge & Mfg. Co.*, 51 Kan. 520, 33 Pac. 303, it appeared that certain officers of a municipal township, without authority, entered into a written contract for the construction of a bridge in that township, the price of which was to be met by issuing bonds. The bridge was constructed in accordance with the terms and conditions of the contract, and was accepted by the officials of the township. On suit being brought, it was contended on the part of the township that its officers were without power to make the contract for the bridge or to create any liability against the property of the township to pay therefor. The bridge company answered that the township officials supposed that they were proceeding according to law in making the contract; that they accepted the bridge and continued to use and retain it; and that if the officials of the township had no authority or exceeded their authority, in making the contract, the township should be required to pay the reasonable value of the bridge. In discussing these claims, the Supreme Court of that state, speaking through Mr. Chief Justice Horton, said:

"It is a well-settled rule that township or other municipal offi-

cers cannot do by indirection that which they might not do directly. *State ex rel. v. Com'rs of Marion Co.,* 21 Kan. 419. If township officers may disregard all of the statutory provisions concerning the construction of and payment for bridges, and create a liability against the people of a township by accepting bridges or other work without any power so to do, and thereby make the township liable, then the provisions of the statute defining how bridges should be built and paid for have no force whatever. Under such a rule, the township officers may at any time build and accept bridges and create liabilities against the people of the township without a vote and without limit. As the contract between the township officers and the bridge and manufacturing company is void under the statutes, we do not think the other facts disclosed show the township is estopped from asserting the want of power on the part of the township officers, or from defendant against any liability for the bridge. There is no innocent holder of bonds in this case, and in fact no innocent parties. The township officers, as well as the bridge and manufacturing company, are presumed to know the law. The statute clearly declares the conditions upon which a municipal township may obtain bridges; but if the provisions of the statute are overlooked, or voluntarily cast aside by the parties, with full knowledge of all the facts, no estoppel of any kind can be created. There is a seeming hardship in refusing to pay for the bridge after the money of the company has completed it and it is in use upon a regular laid out public highway. But the want of legal authority to contract was known, or ought to have been known, by the company before it expended any of its money. Therefore it is at fault. Those dealing with a township must see to it that its officers have power to act. In this case nothing was concealed, and all the facts appear upon the public records. A township or other municipality can only act by the mode prescribed by law. Any other rule leaves the taxpayers at the mercy of the officers of the township and contractor, and would render all statutory provisions of limitation of power nugatory. *Lewis v. Com'r's of Bourbon Co.,* 12 Kan. 186; 15 Am. & Eng. Ency. of Law, 1124; *Daly v. City of San Fancisco* [72 Cal. 154] 13 Pac. 321; *Buchanan v. Litchfield,* 102 U. S. 278 [26 L. Ed. 138]; *Newberry v. Fox* [37 Minn. 141] 33 N. W. 333 [5 Am. St. Rep. 830]; (1887); *Reichard v. Warren Co.,* 31 Iowa, 381; *Brady v. Mayor of N. Y.,* 2 Bosw. [N. Y.] 187; *Law v. People,* 87 Ill. 385. Of course, as the bridge was constructed upon

the highway with the permission of the authorities, the company may remove the same. As the township refuses to pay for the bridge, it can have no interest or right to keep it."

Additional authorities to the same effect as those above cited may be noted as follows: *Louisiana v. Wood*, 102 U. S. 294, 26 L. Ed. 153; *Lee v. Board of Com'rs*, 114 Fed. 744, 52 C. C. A. 376; *Wrought Iron Bridge Co. v. Town of Utica et al.* (C. C.) 17 Fed. 316; *La France Fire Engine Co. v. City of Syracuse*, 33 Misc. Rep. 516, 68 N. Y. Supp. 894; *Berlin Iron Bridge Co. v. Board of Com'rs*, 111 N. C. 317, 16 S. E. 314; *Harrison County Court v. Smith's Adm'r*, 15 B. Mon. (Ky.) 155; *Paul v. City of Kenosha*, 22 Wis. 266, 94 Am. Dec. 598.

While, under the circumstances arising in this class of cases, all the authorities deny the right of recovery either on the contract or *quantum meruit*, still all agree that the municipality cannot keep the property, and that plaintiff is entitled to retake it. This seems to be the only remedy available.

It follows that the judgment of the trial court was correct, and the same is accordingly affirmed.

TURNER, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., not sitting.