### FAIRBANKS, MORSE & CO. v. CITY OF WAGONER, OKL., et al.

### CITY OF WAGONER, OKL., v. FAIRBANKS, MORSE & CO.
### Nos. 1243, 1244.

Circuit Court of Appeals, Tenth Circuit.
Nov. 10, 1936.

For prior opinion, see 81 F.(2d) 209.

Henry G. Snyder, of Oklahoma City, Okl., and Vincent L. Boisaubin, of St. Louis, Mo. (Snyder, Owen & Lybrand, of Oklahoma City, Okl., Jones, Hocker, Gladney & Jones, of St. Louis, Mo., and Poppenhusen, Johnston, Thompson & Cole, of Chicago, Ill., on the brief), for Fairbanks, Morse & Co.

Joseph C. Stone, of Muskogee, Okl. (John H. Scriba, of Wagoner, Okl., and D. H. Linebaugh, Charles A. Moon, and Francis Stewart, all of Muskogee, Okl., on the brief), for City of Wagoner.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

At the rehearing granted herein, counsel for the City presented the contention, not heretofore urged in this case, that the City was without authority to enter into a contract for the purchase of an electric power plant to be paid for out of the earnings thereof. In other words, that municipalities in Oklahoma are not authorized to enter into "special fund" contracts.

In Baker v. Carter, 165 Okl. 116, 25 P. (2d) 747, 756, the court quoted with approval from Graham v. Childers, 114 Okl. 38, 241 P. 178, as follows:

"An examination of the Constitution and statutes shows there is little, if any, analogy between the fiscal system of the municipal subdivisions of the state and that of the sovereign itself. This is true for what might be termed an axiomatic principle of the law, to wit, that the municipal subdivisions can, in the exercise of their contractual power, do only those things which incur an expenditure of public funds, which are expressly authorized by the Constitution and statutes of the state; whereas .the rule governing the sovereign is entirely to the contrary. The sovereign speaks through its legislative body, and the legislative body determines the policy of the sovereign which has no limitation as to expenditures, save and except those which are expressly placed on its exercise by the Constitution . of the state. So we find that municipal subdivisions must have express authority, while the sovereign, to be limited, must have express limitations."

In Zachary v. City of Wagoner, 146 Okl. 268, 292 P. 345, 349, the court said:

"If the city of Wagoner desires to purchase the property sought to be purchased, it may submit the question to the qualified property taxpaying voters of the city, and, upon the approval thereof by a majority thereof, the city may make the purchase without regard to any constitutional limitation, under the provision of ,section 27, article 10, of the Constitution. That section is placed in our Constitution for a distinct purpose. This court will not destroy the effect of that section by saying that municipal officers may evade its force by purchasing equipment for a public utility to be paid for out of the saving to the municipality from the use of the equipment so purchased."

The Oklahoma Court reiterated this view in Layne-Western Company v. City of Depew (Okl.Sup.) 59 P.(2d) 269, 271.

In State v. State Board of Equalization, 107 Okl. 118, 230 P. 743, 748, the court said:

"'Where the Constitution confers the power to do a particular act, and prescribes the means and manner of doing such act, such means or manner is exclusive of all others.' Sapulpa v. Land [101 Okl. 22] 223 P. 640 [35 A.L.R. 872]."

Section 12—842, Kans.R.S.1923, authorizes a city to purchase or construct an electric-light plant to supply it and its inhabitants with electric energy for light, fuel and heat. Section 12—843, Kans. R.S.1923, authorizes a city, with the approval of a majority of its electors, to issue bonds to provide funds for purchasing or constructing an electric-light plant. In the recent case of Kansas Power Company v. Fairbanks, Morse & Company, 142 Kan. 109, 45 P.(2d) 872, the court held that section 12—843 provides the exclusive method for a city to finance the purchase or construction of an electric-light plant other than out of current revenue on hand, or to be presently available from a lawful tax levy already made; and that a city is without authority to enter into a "special fund" contract for the purchase of such a plant. See, also, Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N.W. 649, 650; Van Eaton v. Town of Sidney, 211 Iowa, 986, 231 N.W. 475, 71 A.L.R. 820.

■ We conclude that section 27 art. 10, of the Oklahoma Constitution, quoted in note 1 to our former opinion herein [81 F.(2d) 209, 212], provides the exclusive method by which a city may finance the cost of an electric power plant, other than from current funds on hand or presently to be available from lawful tax levies already made from current earnings, or from the proceeds of a bond issue authorized in accordance with section 26, art. 10, of the Oklahoma Constitution.

It follows that the City was unauthorized to enter into the special fund contract involved herein.

In Baker v. Carter, supra, the court quoted with approval from the opinion in Garrett v. Swanton, 216 Cal. 220, 13 P. (2d) 725, 729, as follows:

"The overwhelming weight of judicial opinion in this country is to the effect that bonds, or other forms of obligation issued by states, cities, counties, political subdivisions, or public agencies *by legislative sanction and authority,* if such particular bonds or obligations are secured by and payable only from the revenues to be realized from a particular utility or property, acquired with the proceeds of the bonds or obligations, do not constitute debts of the particular state, political subdivision, or public agency issuing them, within the definition of 'debts' as used in the constitutional provisions of the states having limitations as to the incurring of indebtedness." (Italics ours.)

In Faught v. City of Sapulpa, 145 Okl. 164, 292 P. 15, 22, the court said:

"The 'evident object and purpose' of the adoption of article 10 of the Constitution has been stated repeatedly. At an early date this court, speaking through Mr. Justice Williams, in Campbell et al. v. State ex rel. Brett, 23 Okl. 109, 99 P. 778, 784, * * * with particular reference to section 26, art. 10, supra, said: 'The settled purpose has been to place restrictions and limitations upon the taxing power.'"

To the same effect, see Gentis v. Hunt, 121 Okl. 71, 247 P. 358, 361; O'Neil Engineering Co. v. Town of Ryan, 32 Okl. 738, 124 P. 19; Campbell v. State, 23 Okl. 109, 99 P. 778.

■ For the reasons stated in our former opinion, the contract in question did not impose a tax burden directly or indirectly on the taxpayers of the City and did not create a debt. Hence, it was not prohibited by section 26, art. 10 of the Oklahoma Constitution or by the provisions of the City's charter. But the contract being unauthorized, Fairbanks Morse is not entitled to the relief granted in our former opinion. We think, however, it is entitled to equitable relief, for reasons we shall undertake to state.

Section 6, art. 18, of the Okla. Constitution, provides:

"Every municipal corporation within this State shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

Section 6350, Okla.St.1931, is to the same effect.

Clearly the City had authority to contract for the purchase of the power plant. The contract was not prohibited by law;

nor was it contrary to public policy or public morals. The City simply was without authority to obligate itself to pay for the equipment in the manner provided in the contract. The illegality in the contract related not to its substance but only to a specific mode of performance by the City. Chapman v. County of Douglas, 107 U.S. 348, 2 S.Ct. 62, 27 L.Ed. 378. Fairbanks Morse acted in good faith.

When the City denied liability under the contract, it did not offer to make restitution of the power plant; and at the trial below, the City contended it was entitled to retain the power plant and recover back the payments made under the contract. In their brief on rehearing, counsel for the City abandoned that manifestly unjust position, saying:

"In case of conditional sales transaction of this sort, where payments are provided for out of anticipated special funds to accrue from the operation of the property sold, and provision is made in the contract for retaking the property conditionally sold, the vendor's sole remedy, in case of default, is to retake the property and recover only that portion of the special fund accrued to the seller's benefit up to the time of retaking. The contract, if sustainable at all, is on the theory of the exclusiveness of such remedy as provided in the contract. To enforce performance of the contract would be to fix on the City liabilities and obligations within the inhibition of the Constitution and statutes."

■ It is a well settled principle that the obligation to do justice rests upon all persons, natural and artificial, and if a municipality obtains the money or property of another without authority, the law, independent of any statute, will compel restitution or compensation.

■ Where a municipality enters into a contract for the purchase of property which it has the right to acquire, but undertakes to pay therefor in a manner not authorized by law, and the contract is not prohibited by law or contrary to public morals, the municipality will not be permitted to retain the property and deny its liability on the contract. If it asserts that the contract is ultra vires, it must make restitution or render an equivalent therefor.[1]

In Chapman v. County of Douglas, 107 U.S. 348, 2 S.Ct. 62, 68, 27 L.Ed. 378, the county had entered into a contract with Chapman to purchase certain land for a poor-farm. The county agreed to secure and to make deferred payments for the land, in a manner not authorized by law. Chapman conveyed the land to the county and it refused to pay for the same as provided in the contract. Chapman sought equitable relief against the county. The court said:

"The agreement, as we have assumed, so far as it relates to the time and mode of payment, is void; but the contract for the sale itself has been executed on the part of the vendor by the delivery of the deed, and his title at law has actually passed to the county. As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restitution of his title would seem to be as clear as it would be just, unless some valid reason to the contrary can be shown. As was said by this court in Marsh v. Fulton County, 10 Wall. 676, 684 [19 L.Ed. 1040], and repeated in Louisiana v. Wood, 102 U.S. 294, 299 [26 L.Ed. 153], 'the obligation to do

---

[1] Chapman v. County of Douglas, 107 U.S. 348, 2 S.Ct. 62, 27 L.Ed. 378; Marsh v. Fulton County, 10 Wall. 676, 684, 19 L.Ed. 1040; Louisiana v. Wood, 102 U.S. 294, 299, 26 L.Ed. 153; Ward v. Love County, 253 U.S. 17, 24, 40 S. Ct. 419, 422, 64 L.Ed. 751; Lee v. Board of Com'rs of Monroe County (C.C.A. 6) 114 F. 744, 747; Wrought-Iron Bridge Co. v. Town of Utica (C.C.Ill.) 17 F. 316; Vincennes Bridge Co. v. Board of County Com'rs (C.C.A.8) 248 F. 93, 103; Bladine v. Chicago Joint Stock Land Bank (C.C.A.8) 63 F.(2d) 317, 322; Security Nat. Bank of Watertown, S. D. v. Young (C.C.A.8) 55 F.(2d) 616, 618, 84 A.L.R. 100.

For other cases where relief against the municipality has been accorded in situations analogous to the instant case, see Superior Mfg. Co. v. School Dist. No. 63, Kiowa County, 28 Okl. 293, 114 P. 328, 331, 37 L.R.A.(N.S.) 1054; City of Parkersburg v. Baltimore & O. R. Co. (C. C.A.4) 296 F. 74, 83; Hill County v. Shaw & Borden Co. (C.C.A.9) 225 F. 475; Paul v. City of Kenosha, 22 Wis. 266, 94 Am.Dec. 598; Pimental v. City of San Francisco, 21 Cal. 351, 352, 362, 363; Morville v. American Tract Society, 123 Mass. 129, 25 Am.Rep. 40; Argenti v. City of San Francisco, 16 Cal. 255, 256, 283; Hitchcock v. Galveston, 96 U.S. 341, 24 L.Ed. 659; Lehmann v. Revell, 354 Ill. 262, 188 N.E. 531, 535, 536. Note, 20 L.R.A.(N.S.) 110.

justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' And see, also, Miltenberger v. Cooke, 18 Wall. 421 [21 L.Ed. 864]. The illegality in the contract related, not to its substance, but only to a specific mode of performance. * * * The purchase itself, as we have seen, was expressly authorized. The agreement for definite times of payment and for security alone was not authorized. It was not illegal in the sense of being prohibited as an offense; the power in that form was simply withheld. The policy of the law extends no further than merely to defeat what it does not permit, and imposes upon the parties no penalty. * * *

"The principle was applied in the case of Morville v. American Tract Society, 123 Mass. 129, 137 [25 Am.Rep. 40], where it was said: 'The money of the plaintiff was taken and is still held by the defendant under an agreement which, it is contended, it had no power to make and which, if it had power to make, it has wholly failed on its part to perform. It was money of the plaintiff, now in possession of the defendant, which in equity and good conscience it ought now to pay over, and which may be recovered back in an action for money had and received. The illegality is not that which arises where the contract is in violation of public policy or of sound morals, and under which the law will give no aid to either party. The plaintiff himself is chargeable with no illegal act, and the corporation is the only one at fault in exceeding its corporate powers by making the express contract. The plaintiff is not seeking to enforce that contract, but only to recover his own money and prevent the defendant from unjustly retaining the benefit of its own illegal act. He is doing nothing which must be regarded as a necessary affirmance of an illegal act.' The decision of this court in Hitchcock v. Galveston, 96 U.S. 341 [350] 351 [24 L.Ed. 659], covers the very point. There a recovery was allowed for the value of the benefit conferred upon the municipal corporation, notwithstanding, and, indeed, for the reason, that the contract to pay in bonds was held to be illegal and void. 'It matters not,' said the court, 'that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds, because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law.'

"This doctrine was fully recognized by the supreme court of Nebraska as the law of that state in the case of Clark v. Saline County, 9 Neb. 516 [4 N.W. 246]."

This doctrine finds approval in the decisions of the Supreme Court of Oklahoma. In Board of Com'rs v. Western Bank & Office Supply Co., 122 Okl. 244, 254 P. 741, 743, the court said:

"The case presented by the record herein shows no moral turpitude on the part of any of the parties in entering into these contracts. There is evidence that before the contracts were entered into the chairman of the commissioners sought the advice of the county's legal advisers, who informed the commissioner and the representative of the plaintiff that the contracts would be legal.

"In sustaining the right of a builder of a bridge erected under an invalid contract with the commissioners of a county, to remove the same because of nonpayment of the purchase price, the court, in Lee v. Board of County Commissioners of Monroe County (C.C.A.) 114 F. 744, said:

" 'But while the law affords no remedy, equity, although it will not enforce the contract or create a contract between the parties on account of the acceptance and retention of the property, when the property is in existence, and in the hands of the defendant, will not allow it to retain that to which it has no title whatever, and prevent the owner from reclaiming it. * * * The complainant has no remedy at law, and to deny him equitable relief would be to enforce the contract on the part of the bridge company, and to allow the defendant to repudiate its part of the same contract, and thereby appropriate, without compensation, property to which it had no legal or equitable right. It was said by the federal Supreme Court in the case of Marsh v. Fulton County, 10 Wall. 676, 684, 19 L.Ed. 1040, 1043: "The obligation to do justice rests upon all persons, natural or artificial; and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation." '

"The language used by the Supreme Court of the United States in Marsh v.

Fulton County, above quoted, has been cited with approval in many decisions of the Supreme Court of the United States. Chapman v. County of Douglas, supra; Louisiana v. Wood, 102 U.S. 294, 26 L. Ed. 153; Ward v. Board of County Commissioners of Love County, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751.

"The rule announced in the above cases is clearly recognized by this court in the case of Superior Mfg. Co. v. School Dist. No. 63, Kiowa County, 28 Okl. 293, 300, 114 P. 328, 331, 37 L.R.A.(N.S.) 1054, where it is said:

" 'While, under the circumstances arising in this class of cases, all the authorities deny the right of recovery either on the contract or quantum meruit, still all agree that the municipality cannot keep the property, and that plaintiff is entitled to retake it. This seems to be the only remedy available.' "[2]

The duty of the City to make restitution seems clear. The City, however, is not in a position to return the power plant in the condition it was when delivered. It has used the power plant since March 16, 1928, with the exception of a period of eight months and twenty-six days. The use has been of benefit to the City. During such use, in part due to normal wear and in part to negligent and improper operation by the City's employees, the power plant has depreciated in value.

In Argenti v. City of San Francisco, 16 Cal. 255, 256, 283, the court said:

"If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it—not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it; *or if used by her, to render an equivalent to the true owner, from the like general obligation."* (Italics ours.)

The above language was quoted with approval by the Supreme Court in Chapman v. Douglas County, supra.[3]

Here the use by the City has not wholly exhausted the power plant, but it has substantially depreciated it. If the City is to be relieved from the contract, the fruits of which it has partly enjoyed to its benefit, equity and justice require that it should make restitution of the power plant, and to the extent it is unable to restore, because of its use thereof, that it should render compensation therefor. To require the City so to do, will in no sense be to enforce the unauthorized contract. Rather it will be to regard the contract as unauthorized, but to require the City to do justice with respect to the power plant it has received thereunder, has used to its benefit, and still retains.

We conclude the City should make restitution of the power plant and compensate Fairbanks Morse for the reasonable depreciation due to the use by the City.

The trial court should find the reasonable cash value of the power plant on the date it was delivered to the City, and a reasonable allowance for depreciation during the period of its use by the City. The City should be given an election to pay the cash value of the power plant with legal interest, less the amounts with legal interest paid under the contract, and to retain the power plant. In the event the City does not so elect, the court should award Fairbanks Morse restitution of the power plant and a reasonable allowance for depreciation, payable only out of the net earnings of the power plant, and require it to account for the payments received under the contract.

Leave should be granted to amend the pleadings so they will conform to the basis for relief herein indicated and present the applicable in the instant case because the contract did not create a debt of the City.

2 On rehearing the court denied the relief, not because of any departure from the principles announced in its former opinions but on the narrow ground that a statute (section 5955, Okla.St.1931) giving a remedy against the public officials who entered into the unauthorized contract, was intended to provide an exclusive remedy for the other party to the contract. See Board of Com'rs v. Western Bank & Office Supply Co., 122 Okl. 244, 254 P. 744-746. The statute is not

3 See, also, Scott County, Ark., v. Advance-Rumley Thresher Co. (C.C.A.8) 288 F. 739, 752; City of Parkersburg v. Baltimore & O. R. Co. (C.C.A.4) 296 F. 74, 83; City of Shidler v. H. C. Speer & Sons Co. (C.C.A.10) 62 F.(2d) 544, 547; Clark v. Saline County, 9 Neb. 516, 4 N. W. 246; McGovern v. City of Chicago, 281 Ill. 264, 118 N.E. 3, 10; Walker v. City of Richmond, 173 Ky. 26, 189 S.W. 1122, 1125, 1126, Ann.Cas.1918E, 1084.

issues of reasonable value and depreciation. The receivership should be speedily terminated.

Reversed and remanded for further proceedings in accordance with this opinion.

The costs of this appeal shall be assessed equally against the parties.