**BUSCH–SULZER BROS.–DIESEL ENGINE CO. v. CITY OF WALTERS.**

No. 2586.

Circuit Court of Appeals, Tenth Circuit.

Jan. 14, 1943.

V. P. Crowe, of Oklahoma City, Okl. (Arthur B. Shepley, Jr., of St. Louis, Mo., Embry, Johnson, Crowe & Tolbert, of Oklahoma City, Okl., Nagel, Kirby, Orrick & Shepley, of St. Louis, Mo., and J. H. Cline, of Lawton, Okl., on the brief), for appellant.

Walter Hubbell, of Walters, Okl., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

In September, 1936, the Busch-Sulzer Bros.-Diesel Engine Company[1] submitted a proposal to the City of Walters, Oklahoma,[2] to sell it a Diesel oil engine with accessories and equipment, for $29,521, payable in forty-eight monthly installments of $615.02 each. The City accepted the proposal, subject to the approval and authorization of the qualified property tax paying voters of the city, to be obtained in accordance with Section 27, Article 10 of the Constitution of Oklahoma. At a special election held for that purpose, the qualified voters authorized the purchase of the equipment, the creation of the indebtedness, and the payment thereof in forty-eight monthly installments. The City thereupon entered into a contract for the purchase of the equipment, to be paid for in forty-eight monthly installments, but did not provide for the collection of an annual tax as provided for in said section. The engine was delivered and installed and has been ever since and is now being used by the City. The City made twenty-six monthly payments and then refused to make further payments. The Company thereupon instituted this action in the United States District Court for the Western District of Oklahoma, praying judgment for the balance due on the contract, or that the court appraise the property and that the City be given the right to pay such value and retain the property, or upon refusal, that the Company have judgment for its return; or, in the alternative, that the City be required to pay the balance of the purchase price or return the property. Judgment was entered for the City and the Company has appealed.

The City places its main reliance upon two decisions by the Supreme Court of Oklahoma, Board of Commissioners v. Western Bank & Office Supply Co., 122

---

[1] Herein called the Company.

[2] Herein called the City.

Okl. 244, 254 P. 741, and J. B. Klein Iron & Foundry Co. v. Board of Commissioners, 178 Okl. 72, 61 P.2d 1055, while the Company relies in the main upon the decision of the Supreme Court of Oklahoma in City of Pawhuska v. Pawhuska Oil & Gas Co., 118 Okl. 201, 248 P. 336, and the decision by this court in Fairbanks, Morse & Co. v. City of Wagoner, 10 Cir., 86 F.2d 288.[3]

■ It is a well settled equitable principle that the obligation to do justice rests upon all persons, natural and artificial, and that if a municipality obtains the money or property of another without authority, the law, independent of any statute, will compel restitution or compensation. See Fairbanks, Morse & Co. v. City of Wagoner, supra, and cases cited therein. Oklahoma recognizes and adheres to this principle. Its original decision in the Western Bank & Office Supply Company case, supra, was based thereon, and while on rehearing the court denied relief, it did not repudiate this principle but placed its ultimate decision on the narrow ground that a statute (§ 8638, Okla.Stat.1921, 62 O.S.1941 § 479) giving a remedy against the public officials who entered into an unauthorized contract was intended to provide an exclusive remedy for the party to the contract and that he therefore could seek no other. This was the interpretation we placed on the decision in Fairbanks, Morse & Co. v. City of Wagoner, supra. (See footnote 2, 86 F.2d 293.)

The Supreme Court of Oklahoma again considered the same question it had before it in the Western Bank & Office Supply case, in the recent case of J. B. Klein Iron & Foundry Co. v. Board of Commissioners, supra. It in no wise criticized the interpretation we placed on its decision in the Western Bank & Office Supply case. This leads us to conclude that we properly interpreted the effect of the decision in that case.

The case of City of Pawhuska v. Pawhuska Oil & Gas Co., supra, distinguishes between activities of a city that are controlled by Section 26, Article 10 of the Constitution, and those which fall within Section 27, Article 10. The distinction is made between purely governmental functions and proprietary functions of municipalities. It held that Section 26, Article 10, relates to and controls the governmental functions of municipalities, while Section 27, Article 10, regulates proprietary activities of municipalities.

Section 479, Title 62, O.S.Ann., which is the same as Section 8638, C.O.S.1921, discussed in the Western Bank & Office Supply Co. case, vitalizes Section 26, Article 10. This section makes it unlawful for any city official to incur any indebtedness against the city in excess of the estimate made and approved by the excise board for such purpose for the current fiscal year, and makes the officers contracting such excess indebtedness civilly liable therefor. The indebtedness incurred in the Western Bank & Office Supply Company case, as well as in the J. B. Klein Iron & Foundry Co. case, was incurred in the exercise of a governmental function and was in ex-

---

[3] The constitutional provisions necessary to be considered are Sections 26 and 27, Art. 10, Oklahoma Constitution. They are as follows:

"§ 26. No county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for State and county purposes previous to the incurring of such indebtedness: Provided, That any county, city, town, township, school district, or other political corporation, or subdivision of the State, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same.

"§ 27. Any incorporated city or town in this State may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city: * * * ."

cess of the estimate by the excise board and was made without authority of the electors.

The City of Pawhuska case specifically holds that the debt limitation provisions of Section 26, Article 10, do not apply to a city in the operation of a public utility owned exclusively by the city. It follows as a natural consequence that the penalty provision of Section 479, Title 62, O.S.Ann., which makes officials of a municipality civilly liable for such excess indebtedness does not apply and therefore affords no remedy to a creditor who has parted with his property in good faith and to the benefit of the municipality under an activity authorized by Section 27, Article 10.

We therefore conclude that this transaction is controlled by the equitable principle announced by us in the Fairbanks, Morse & Company case, supra. The contract involved here is not illegal or unlawful. The city officials were specifically authorized to execute it in the specific manner provided by Section 27, Article 10. They were even authorized to provide for the payment of the equipment in forty-eight monthly installments. The only flaw in the transaction and the only defense by the City is that no provision was made at the time of the execution of the contract for the collection of an annual tax to provide a fund for the liquidation of the obligation. But it is not alleged, nor is it apparent, that a tax levy will be required to pay the obligation. It is not unreasonable to assume that the profits from the operation of the plant will pay the claim. Presumably the twenty-six payments that were made were made from such profits. The City's answer alleges that:

"The earnings from said municipal plant pays a major portion of the operating expenses of its City government."

The City in its answer admits that: "Without said engine, plaintiff could not operate its municipal plant and would therefore be deprived of its source of electric light and power."

Under all the circumstances, it would be grossly inequitable to permit the City to continue to enjoy the benefits of this transaction without compensating the Company. There is no claim here that the City was in any way overreached in the transaction or that the price of the equipment was otherwise than fair.

We conclude that the City should either make restitution of the property or pay the balance due thereon. The trial court should enter judgment giving the City the right to pay the balance of the purchase price, or upon its failure to so elect, order restitution of the property to the Company.

Reversed and remanded for further proceedings in accordance with this opinion. The cost of this appeal shall be assessed equally against the parties.

PHILLIPS, Circuit Judge (concurring).

It is my opinion that the amount which the city should pay, in the event it elects to purchase the engine, should be arrived at by determining the reasonable value of the engine at the time of its delivery to the city, adding thereto the reasonable value of the use of the engine by the city during the period used and deducting therefrom a reasonable depreciation for that period, and the amount of the payments made by the city. Since, however, the computation of the amount as directed by Judge HUXMAN'S opinion is not likely to result in the city paying a greater amount than it would pay under the above formula, I concur.